[No. B211584. Second Dist., Div. Eight. Nov. 3, 2009.]

CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, LLC, Plaintiff and Respondent, v.
DANNING, GILL, DIAMOND & KOLLITZ, Defendant and Appellant.

## COUNSEL

Danning, Gill, Diamond & Kollitz, Walter K. Oetzell and Uzzi O. Raanan for Defendant and Appellant.

Frandzel Robins Bloom & Csato, Thomas M. Robins III and Peter Csato for Plaintiff and Respondent.

## OPINION

**FLIER, J.**—Appellant Danning, Gill, Diamond & Kollitz (DGDK), a law firm, and respondent Credit Suisse First Boston Mortgage Capital, LLC (Credit Suisse), filed cross-motions for summary judgment. The trial court denied and granted, respectively, DGDK's and Credit Suisse's motions. The fundamental question is whether a lien that arises upon service of an order to

appear at a judgment debtor examination, referred to by the parties as an "ORAP" lien, applies to funds acquired by DGDK from the judgment debtor (not a party to this appeal) after the ORAP lien came into existence. The trial court concluded that the ORAP lien applied to funds acquired by DGDK and therefore entered judgment for Credit Suisse.

In the trial court, DGDK relied on a certain statutory provision, discussed at length in this opinion, that provides for an exception to the imposition of an ORAP lien. We raised on our own motion the question whether the exception in question is limited to letter of credit transactions, an inquiry that was entirely new to the case. We asked for and received supplemental briefing on this issue. We conclude that the exception in question is limited to letter of credit transactions. Because the record does not unequivocally show that there was no letter of credit transaction in this case, we remand with directions for further proceedings that are consistent with this opinion. It is therefore necessary to reverse the judgment.

## FACTS[1]

On September 30, 2004, Credit Suisse obtained a judgment of approximately $16.8 million against Ronald Anson, among others. This judgment was registered in the United States District Court for the Southern District of California on October 31, 2004. On the same day, Credit Suisse served Anson with an order to appear at a judgment debtor examination in accordance with Code of Civil Procedure section 708.110.[2]

Under subdivision (d) of section 708.110, service of the notice to appear created a lien on the personal property of the judgment debtor, Anson.[3] As one court has explained the rule, "[u]nder the debtor examination statute, the lien upon all nonexempt property is created at the time the judgment debtor is served with notice of the examination. [Citations.] Unlike the third party examination case where the property must be adequately identified for the lien to attach, the lien on the judgment debtor's property attaches whether or not the property is described in the notice in sufficient detail to be reasonably identifiable." (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 552–553 [39 Cal.Rptr.2d 432].)

---

[1] The facts are largely undisputed; we note when the facts are disputed.

[2] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] "The judgment creditor shall personally serve a copy of the order on the judgment debtor not less than 10 days before the date set for the examination. Service shall be made in the manner specified in Section 415.10. Service of the order creates a lien on the personal property of the judgment debtor for a period of one year from the date of the order unless extended or sooner terminated by the court." (§ 708.110, subd. (d).)

On October 31, 2004, Anson had an account of at least $1 million at Value Home Loan. The law firm of Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Linceberg, PC (Bird, Marella), held a security interest in this account. On or about November 30, 2004, Anson instructed Value Home Loan to pay Bird, Marella $300,000 from Anson's account. In turn, Bird, Marella paid DGDK $150,000 on or about December 9, 2004. This sum was deposited by DGDK in the client trust account.

Credit Suisse characterizes this payment as a retainer. While DGDK disputes that it was a retainer, DGDK did not offer any evidence to support its claim that this was not a retainer. In fact, it appears that as of November 30, 2004, Anson owed DGDK only $3,458 and that the $150,000 was deposited in the client trust account on December 14, 2004. Thus, Credit Suisse seems to have the better side of this dispute, which, in light of our analysis of the section 697.740, subdivision (j) exception (see *post*, at p. 1295), is not material.

On or about July 12, 2005, Anson instructed Value Home Loan to wire $50,000 to DGDK; Bird, Marella released its lien on Anson's Value Home Loan's account to the extent of this payment. DGDK applied this sum to fees and costs incurred by Anson.

DGDK learned of the existence of the ORAP lien sometime between October 31, 2004, and December 1, 2004; it is of some interest that this is not a disputed fact.

## THE CROSS-MOTIONS

DGDK contends that the trial court erred in handling the procedural aspects of the cross-motions for summary judgment. We therefore set forth the sequence of events, as well as the salient aspects of these motions.

It began with a stipulation between DGDK and Credit Suisse, filed on February 28, 2008, that their motions for summary judgment could be filed on or before March 17, 2008. At this time, trial was set for April 1, 2008. Thus, the parties needed relief from the rule requiring 75 days of notice for the hearing, as well as from the rule providing that motions for summary judgment have to be heard no later than 30 days before trial.[4]

It also appears that, at least when the stipulation was filed, both sides agreed that a central issue, if not *the* central issue, in the case was whether DGDK could assert the exception from the ORAP lien set forth in subdivision

---

[4] Section 437c, subdivision (a).

(j) of section 697.740. As we discuss below, subdivision (j) exempts from an ORAP lien "[a] person who acquires any right or interest in letters of credit, advices of credit, or money." (We will refer to this provision from time to time as the subdivision (j) exception.) In substance, DGDK claimed that it had a right or interest in "money" because of the attorney fees generated for work performed on behalf of Anson. Credit Suisse argued, as it does in this appeal, that the "money" referred to in subdivision (j) of section 697.740 has to be "currency and coin and not rights to payment of checks or the proceeds of a wire transfer."

The trial court denied the stipulation without prejudice, the minute order stating that the court would "consider adjustment of dates once the motions have been served and filed, and a hearing date reserved."

DGDK's reactions to this order are somewhat murky. Stated to its best advantage in the appellate opening brief, DGDK's reasons are said to have been that the delay caused by the rejection of the stipulation "placed the parties in a position" in which the motions for summary judgment "no longer offered any real utility" and that DGDK no longer agreed with "setting other dates" for the motions.

The next move was Credit Suisse's and that was to file its motion for summary judgment on March 7, 2008. DGDK countered by filing a motion to strike Credit Suisse's summary judgment motion. The latter motion was denied without prejudice and the matter was deferred by the court to a postmediation status conference.

According to DGDK, the court's ruling "put DGDK in a position where it had to choose between participating in the cross motions originally anticipated or simply defend against [Credit Suisse's] Motion. It [DGDK] therefore responded to [Credit Suisse's] Motion and filed its own Motion for Summary Judgment."

DGDK filed its motion for summary judgment on March 14, 2008, and set it for the same date scheduled for Credit Suisse's motion. In addition to relying on the section 697.740, subdivision (j) exception, DGDK's motion also claimed that it qualified for an exception under subdivision (d) of section 697.740 because it was a holder in due course of a negotiable instrument. We note here that the trial court rejected the latter argument because DGDK was on notice of the ORAP lien; DGDK does not renew this contention on appeal.

At a status conference on March 21, 2008, the trial court noted that the trial date was April 1, 2008, and that there were motions for summary judgment set for March 26, 2008. The following ensued: "THE COURT: . . .

[¶] Was that by stipulated shortened notice, Mr. Oetzell [counsel for DGDK]? [¶] MR. OETZELL: Your Honor, it was. [¶] THE COURT: Okay. That's all I need to know. . . ."

The cross-motions for summary judgment were heard and decided on April 16, 2008.

## THE TRIAL COURT'S RULING

In substance, the trial court's ruling on the applicability of the section 697.740, subdivision (j) exception is predicated on the supposed difference between legal fees for services already rendered, on the one hand, and a retainer for services to be rendered in the future, on the other. That is, the trial court reasoned that under the subdivision (j) exception DGDK became entitled to a right or interest in "money" only upon having performed services, but not before.

The trial court declined to address the clashing definitions of "money" as immaterial to its decision. But the court nevertheless rejected as "hypertechnical" Credit Suisse's contention that "money" means currency and coins.

We do not agree with the trial court that the word "money" in subdivision (j) of section 697.740 can be read in isolation and without reference to "letters of credit" and "advices of credit," which precede the word "money." We also disagree with the view that the availability of the subdivision (j) exception depends on whether the "money" has or has not been earned. In our opinion, the subdivision (j) exception addresses letter of credit transactions, and entitlement to "money" is to be determined in terms of a letter of credit transaction. Because the grounds upon which we decide this case were not relied upon by the trial court, subdivision (m)(2) of section 437c, the summary judgment statute, required us to afford the parties the opportunity to file supplemental briefs. The parties have filed supplemental briefs on this issue and have also addressed it during oral argument.

## DISCUSSION

1. *The Applicable Statute*

DGDK contends that the $200,000 that it received was not subject to the ORAP lien because of the section 697.740, subdivision (j) exception. We discuss this exception in detail below. We first set forth the relevant statutory framework.

■ A lien created by section 708.110 is governed by section 697.740. (§ 697.910, subd. (a); see Cal. Law Revision Com. com., 1982 Addition, 16B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 697.910, p. 357.)

In relevant part, section 697.740 provides: "Except as provided in Sections 9617 and 9622 of the Commercial Code and in Section 701.630, if personal property subject to an execution lien is not in the custody of a levying officer and the property is transferred or encumbered, the property remains subject to the lien after the transfer or encumbrance except where the transfer or encumbrance is made to one of the following persons: [¶] . . . [¶] (j) A person who acquires any right or interest in letters of credit, advices of credit, or money."

### 2. *The Meaning of the Word "Money" in Subdivision (j) of Section 697.740*

"A *letter of credit* is a promise to honor a presentation of documents. *Honor* is normally the payment of money, but honor could be some other act, such as the delivery of stock certificates. [¶] The *promisor* is the issuer of the letter of credit, usually a bank. The *promisee* is the beneficiary of the letter of credit. The letter of credit is issued at the request of the *applicant.* The applicant is obligated to the *beneficiary* in a transaction underlying the letter of credit. The purpose of the letter of credit is to assure payment to the beneficiary of the applicant's obligation in the underlying transaction." (Wunnicke et al., Standby and Commercial Letters of Credit (3d ed. 2009) § 2.01, p. 2-3, original italics.)

"An *advised credit* is a credit that the issuing bank has caused to be advised to the beneficiary through an advising bank. . . . [¶] The role of the advising bank is to advise the beneficiary of the establishment of the letter of credit and typically to transmit the required documents to the issuing bank for examination before their acceptance." (Wunnicke et al., Standby and Commercial Letters of Credit, *supra,* § 3.03, p. 3-4.1.)

The question is whether the term "money" in the section 697.740, subdivision (j) exception is to be viewed in isolation or whether it is to be construed in conjunction with the references to "letters of credit" and "advices of credit" that immediately precede it.

We begin with the observation that each of the 11 exceptions set forth in section 697.740 describes a single, integrated transaction. In order not to burden this opinion unnecessarily, we set forth as examples three of these

exceptions in the margin.[5] Since we should construe the entire statute and not just isolated words (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]), we cannot ignore that each of the exceptions describes *one* integrated transaction. Thus, this indicates that we should not divide the section 697.740, subdivision (j) exception into letters of credit and advices of credit, on the one hand, and solely "money," on the other.

■ In the usual letter of credit transaction, it is upon the presentation of documents that the issuer of the letter of credit, the promisor, pays money to the beneficiary. Thus, upon the presentation of documents, the beneficiary has a right or interest in *money. Prior* to the presentation of documents, however, the beneficiary has an interest in the letter of credit or in the advice of credit. Thus, the reference to "money" in addition to letters of credit and advices of credit in the section 697.740, subdivision (j) exception is meant to cover situations when there has been a presentation of documents and the beneficiary therefore has a direct interest in the money that the issuing bank is required to pay.

■ The foregoing considerations establish that "money" is to be read in conjunction with letters of credit and advices of credit. To do so conforms with the canon of construction that "the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used." (*Vilardo v. County of Sacramento* (1942) 54 Cal.App.2d 413, 420 [129 P.2d 165].)[6] If the section 697.740, subdivision (j) exception is interpreted in this fashion, this exception, like the other 10 exceptions, refers to a single, integrated transaction. And it is also true that under this construction the word "money" acquires a very precise meaning, i.e., the right or interest in money arises upon the presentation of documents to the issuer of the letter of credit.

---

[5] "(a) A person who acquires an interest in the property under the law of this state for reasonably equivalent value without knowledge of the lien. For purposes of this subdivision, value is given for a transfer or encumbrance if, in exchange for the transfer or encumbrance, property is transferred or an antecedent debt is secured or satisfied. [¶] . . . [¶]

"(d) A holder in due course (as defined in Section 3302 of the Commercial Code) of a negotiable instrument within the meaning of Section 3104 of the Commercial Code. [¶] . . . [¶]

"(g) A purchaser of chattel paper who gives new value and takes possession of the chattel paper in good faith and in the ordinary course of the purchaser's business or a purchaser of an instrument who gives value and takes possession of the instrument in good faith." (§ 697.740, subds. (a), (d), (g).)

[6] This rule of construction even has a Latin name, *noscitur a sociis* or "it is known by its associates" (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307 [58 Cal.Rptr.2d 855, 926 P.2d 1042]), but we are satisfied with a more colloquial rendition: "[A] word takes meaning from the company it keeps . . . ." (*People v. Drennan* (2000) 84 Cal.App.4th 1349, 1355 [101 Cal.Rptr.2d 584].)

■ Under this construction, the word "or" preceding "money" makes perfect sense in that the beneficiary under the letter of credit can have an interest in the letter of credit *or* the advice of credit *or* in money, depending on the phase of the transaction. Citing *Houge v. Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257], DGDK contends that the word "or" necessarily "demonstrates the [L]egislature's intention to designate separate alternative categories." The thrust of this contention is that "money" in the section 697.740, subdivision (j) exception is a complete alternative to "letters of credit" and "advices of credit" in subdivision (j), i.e., that the word "money" stands by itself. But all that *Houge v. Ford* held is that in its "ordinary sense, the function of the word 'or' is to mark an alternative such as 'either this or that.' " (*Houge v. Ford, supra,* at p. 712.) The decision does not speak of "separate alternative categories," which is DGDK's formulation. ■ As we have shown, depending on the stage of the transaction, the beneficiary under a letter of credit has an interest in the letter of credit or in money, either this or that; i.e., in subdivision (j) money is a true alternative to a letter of credit. ■ And it is also true that *Houge v. Ford* counsels us that "or" may even be read as "and" if such a construction "is found necessary to carry out the obvious intent of the Legislature." (*Houge v. Ford,* at p. 712.) In other words, "or" like any other word in a statute, is to be read in a sensible, contextual manner.

There are two further reasons why we conclude that our interpretation of section 697.740, subdivision (j) is correct.

First. In a letter of credit transaction, the beneficiary has parted with something of value for which he or she is entitled to payment under the letter of credit. Thus, the beneficiary resembles other parties protected by the several exceptions, e.g., he or she is like the person who has paid value for the property without notice of the lien,[7] or the buyer in the ordinary course of business,[8] or the purchaser of chattel paper,[9] to name only three examples. In other words, having parted with something of value, the beneficiary under a letter of credit should have precedence over an ORAP lien. The same cannot be said of a law firm that has received a retainer for services to be rendered.

■ Second. DGDK contends that an ORAP lien must yield to any person who has a right or interest in money, i.e., that a simple claim of right to money defeats the ORAP lien. This would effectively invalidate most if not all ORAP liens as the class of persons who has a right or interest in money is indeed very large. Thus, the construction that we have given the section 697.740, subdivision (j) exception, i.e., that it is an exception covering, broadly speaking,

[7] Section 697.740, subdivision (a).
[8] Section 697.740, subdivision (b).
[9] Section 697.740, subdivision (g).

letter of credit transactions, is to be preferred to one that would effectively abolish ORAP liens in all but a few situations. This would be an absurd result, which, of course, is to be avoided. (*People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1073 [130 Cal.Rptr.2d 133].)

DGDK contends that the "definition of a letter of credit does not refer to 'money' " and cites for this proposition provisions of the California Uniform Commercial Code that deal with and define letters of credit. The point of this argument is that as "money" is not associated with letters of credit, "money" stands alone in subdivision (j) of section 697.740.

We agree with DGDK that the provisions it cites, listed in the margin,[10] do not use the word "money." One of them, however, does the next best thing when it states that the proceeds of a letter of credit "means the cash, check, accepted draft, or other items of value paid or delivered upon honor . . . by the issuer." (Cal. U. Com. Code, § 5114, subd. (a).) We think that all would agree that another word for cash is money. We need not stop here, however, for even DGDK concedes, albeit in a footnote, that most letter of credit transactions involve the payment of money. DGDK attempts to retreat from this concession by stating that "there is nothing that so inextricably links the term letter of credit or a letter of credit transaction and the term 'money' as to demonstrate . . . that . . . section 697.740(j) limits the section to letter of credit transactions." With this statement we cannot agree. In the vast majority of letter of credit transactions, money is the sole point of the transaction.

Finally, there is no merit to DGDK's contention that as the advisor does not assume liability on the letter of credit, "it is difficult to see what right or interest one would acquire in an 'advice of credit' " transaction. The short answer to this is that it is the beneficiary under the letter of credit who has an interest in the advice of credit.

In light of our analysis, it is not necessary for us to address Credit Suisse's contention that the trial court erred in rejecting the view that "money" in subdivision (j) of section 697.740 refers to currency and coins and not a right to payment.

It is also not necessary for us to address DGDK's contention that the trial court's decision was based on a reason that was not addressed in the motions for summary judgment. Because we do not agree with the reasons for the trial court's decision, those reasons are not material.

We conclude that the section 697.740, subdivision (j) exception refers to a letter of credit transaction.

---

[10] California Uniform Commercial Code sections 5114, subdivision (a), 5102, subdivision (a)(8) and 9102, subdivision (a)(51).

### 3. *There Were No Procedural Irregularities*

DGDK formulates its complaint in a variety of ways, but the nub of the matter is that, according to DGDK, the trial court committed procedural error in considering and ruling upon the cross-motions for summary judgment.

We cannot agree with DGDK's view of this matter. Based upon the actual events, it is hard to see how the trial court could have done anything other than what it did.

To begin with, while rejecting the stipulation, the trial court's minute order clearly allowed the parties to file their motions. That, for some reason, DGDK chose not to do so was DGDK's decision and not the trial court's. Since the trial court had given leave to file the summary judgment motions, the trial court was correct in denying DGDK's motion to strike Credit Suisse's summary judgment motion. Be that as it may, once DGDK filed its own motion and stated in open court on March 21, 2008, that the time on these motions had been shortened by an agreement between the parties, DGDK had clearly consented to having the cross-motions heard and decided. The statutorily mandated minimum notice period for summary judgment may be waived by the parties (*Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 758, 768 [15 Cal.Rptr.3d 839]), and that is exactly what happened here.

### 4. *We Remand for Proceedings Consistent with This Opinion*

We requested the parties to file supplemental briefs on the question whether subdivision (j) of section 697.740 is limited to letter of credit transactions. We also informed the parties that, on this record, it did not appear to us that there was a letter of credit transaction in this case and we asked the parties to state whether this preliminary, tentative conclusion was right or wrong. Credit Suisse responded to this second question by stating that this conclusion was correct. DGDK has not answered the second question.

It would not be appropriate for us as an appellate court to compel a party to take a position on a factual question of considerable importance. The determination of facts is for the trial and not the appellate court. Therefore, we express no view on whether there was or was not a letter of credit transaction in this case. Accordingly, we remand for such additional proceedings as may be initiated by the parties. In those proceedings, this opinion constitutes the law of the case. (See generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 459 et seq.)

In light of the need for additional proceedings, it is necessary to reverse and set aside the judgment. The result, in terms of which party prevailed, is therefore mixed. DGDK obtained a reversal, albeit on grounds that it resisted. Credit Suisse is in a strong position *if* in fact there was no letter of credit transaction in this case. Initially, neither party had a hand in the grounds upon which this appeal has been decided. For these reasons, we will not award costs.

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings that are consistent with the views expressed in this opinion. The parties are to bear their own costs on appeal.

Rubin, Acting P. J., and Bigelow, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 2010, S178712.