[No. C063991. Third Dist. June 3, 2011.]

CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION, Plaintiff and Appellant, v.
JAMES S. TILTON, as Acting Secretary, etc., et al., Defendants and Respondents.

## COUNSEL

Stern, Van Vleck & McCarron and John C. McCarron for Plaintiff and Appellant.

K. William Curtis, Warren C. Stracener, Paul M. Starkey, Jennifer M. Garten and Ronald R. Pearson for Defendants and Respondents.

OPINION

**NICHOLSON, J.**—This is a case of statutory construction. Plaintiff California Correctional Peace Officers Association (CCPOA) claims the trial court erred when it determined Penal Code section 13602, subdivision (a), authorized defendant California's Department of Corrections and Rehabilitation (CDCR) to conduct training for correctional peace officers away from CDCR's training academies in Galt and Stockton. We agree with CCPOA and reverse.

## FACTS

State law requires CDCR to provide basic correctional officer training to persons seeking to become correctional peace officers. (Pen. Code, § 13603, subd. (a).)[1] Generally, CDCR provides this basic training at either its Galt or Stockton academies. Those accepted into the academies are called cadets. CDCR employs cadets as correctional officers (but not peace officers) while they attend the academies. The cadets are state employees and are paid a wage. They live in dormitories on campus while attending the academies.

In 2006, CDCR initiated a pilot program to provide basic correctional officer training at three community colleges: Fresno City College, Napa Valley College, and Santa Rosa Junior College. CDCR provided lesson plans and tests, but the community colleges conducted the training and determined if the students passed the academic courses.

CDCR did not employ students who participated in these programs or pay them a wage. The students also provided their own housing. At Napa Valley College, the students paid tuition to attend the training program.

Fifty-two students successfully completed the basic training offered at the community colleges and were hired by CDCR as correctional officers. These students underwent the same preemployment requirements imposed on cadets prior to employment with CDCR.

In addition to the community college pilot program, CDCR conducted a satellite academy in 2006 for cadets at the High Desert State Prison in Susanville. The Susanville academy used instructors from the Galt and Stockton academies and also used the same curriculum. The only differences between the Susanville academy and the Galt and Stockton academies were the location and that the cadets did not have the option of living at the

---

[1] Undesignated references to sections are to the Penal Code.

Susanville academy. Seventy-five cadets completed the Susanville academy and were hired by CDCR as correctional officers.

In a 2006 complaint and petition for writ of mandate, CCPOA challenged the lawfulness of CDCR's community college pilot program and its Susanville satellite academy. It alleged section 13602, subdivision (a), required CDCR to conduct basic training at only the Galt and Stockton academies. That statute reads in relevant part: "The Department of Corrections and Rehabilitation *may* use the training academy at Galt *or* the training center in Stockton." (Italics added.) CCPOA sought temporary, declaratory, and permanent relief prohibiting CDCR from conducting training anywhere other than the Galt and Stockton academies.

In 2008, CCPOA filed a motion for summary adjudication on its cause of action against CDCR's pilot and satellite training programs. The trial court denied the motion. It ruled section 13602 on its face and in light of legislative history does not mandate training at only the Galt and Stockton academies. The court ultimately incorporated this ruling into its judgment against CCPOA.[2]

## DISCUSSION

CCPOA claims the trial court erroneously interpreted section 13602. It asserts the statute mandates CDCR conduct its basic correctional officer training at only the Galt and Stockton academies. CDCR, however, claims section 13602, by using the term "may," is permissive on its face and allows CDCR to conduct training anywhere it chooses. We agree with CCPOA's reading of the statute.

As noted above, the disputed sentence in section 13602, subdivision (a), reads as follows: "The Department of Corrections and Rehabilitation *may* use the training academy at Galt *or* the training center in Stockton." (Italics added.) The trial court found the sentence's meaning clear on its face: CDCR may conduct training at Galt or Stockton, *or anywhere else*. But the language is susceptible to another meaning: CDCR may conduct training at Galt or Stockton, *and nowhere else*. "May" can be interpreted as discretionary or mandatory, but "or" is commonly interpreted as presenting an alternative such as "either this or that," a limiting construction. Interpreting the disputed phrase in context, with assistance from available extrinsic aids, we conclude the Legislature intended to grant CDCR discretion to conduct training at its Galt or Stockton academies, and nowhere else.

---

[2] CCPOA also alleged other causes of action against CDCR which the trial court ultimately resolved against CCPOA. CCPOA appeals from only that part of the judgment rejecting its challenge to the pilot and satellite training programs.

■ We apply well-settled rules governing statutory construction to interpret the statute. "We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. (*People v. Trevino* (2001) 26 Cal.4th 237, 240 [109 Cal.Rptr.2d 567, 27 P.3d 283]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. (*Trevino*, at p. 241; *Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970]; *People v. Woodhead* (1987) 43 Cal.3d 1002, 1007–1008 [239 Cal.Rptr. 656, 741 P.2d 154].)" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

Section 13602's use of the word "or" does not create ambiguity. "The ' "ordinary and popular" ' meaning of the word 'or' is well settled. (*Houge v. Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257].) It has a disjunctive meaning: 'In its ordinary sense, the function of the word "or" is to mark an alternative such as "either this or that." ' (*Ibid.*)" (*In re Jesusa V.* (2004) 32 Cal.4th 588, 622 [10 Cal.Rptr.3d 205, 85 P.3d 2].)[3]

Section 13602's use of the word "may," however, particularly in context with the statute's use of the word "or," creates ambiguity. The Legislature's intended meaning of "may" is not entirely clear on the face of the statute. Moreover, counsel have not cited any published authority interpreting the use of "may . . . or," and we have found none. We thus part company with the trial court and CDCR on this point.

" 'May' is a common grammatical term encompassing multiple meanings, including an expression of 'ability' or 'power' as well as 'permission.' (Webster's New World Dict. (3d college ed. 1988) p. 837.) Moreover, judicial authorities have construed 'may' as both discretionary and mandatory. (See,

---

[3] The word "or" may also have a conjunctive meaning when such construction is necessary to carry out the Legislature's obvious intent. (*In re Jesusa V., supra*, 32 Cal.4th at pp. 622–623.) In one sense, such may be the case here which the parties do not contest. CDCR may conduct basic training at both the Galt and Stockton academies. At issue, though, is whether the use of "or" in the context of the sentence's use of "may" limits CDCR from conducting training anywhere else besides Galt and Stockton. " '[O]r' like any other word in a statute, is to be read in a sensible, contextual manner." (*Credit Suisse First Boston Mortgage Capital, LLC v. Danning, Gill, Diamond & Kollitz* (2009) 178 Cal.App.4th 1290, 1299 [101 Cal.Rptr.3d 192].)

e.g., *In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495] ['The ordinary import of "may" is a grant of discretion.']; *Harless v. Carter* (1954) 42 Cal.2d 352, 356 [267 P.2d 4] [' "Where persons or the public have an interest in having an act done by a public body *'may'* in a statute means *'must.'* (Citation.)" ']; *Hollman* v. *Warren* (1948) 32 Cal.2d 351, 356 [196 P.2d 562] ['may' construed as mandatory in Government Code section 8200]; see also Black's Law Dict. (6th ed. 1990) p. 979, col. 2; Webster's New World Dict., *supra*, at p. 837 ['may' in law means 'shall; must'].) Given this definitional diversity, it is impossible to conclude with sufficient certainty what the Legislature intended by its use of 'may' if we consider the word in isolation. We must therefore focus more broadly on the language, context, and history of the statute." (*People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310], original italics.)

We turn to section 13602's legislative history. It indicates the Legislature, in adopting the statute's latest version, intended to grant CDCR the authority to use both Galt and Stockton academies, but nothing more.

As initially enacted in 1983, section 13602 mandated all correctional peace officer training occur at the Galt academy. The statute read: "The departments [California Department of Corrections and the Department of the Youth Authority] shall jointly use the training academy at Galt. The training divisions, in using the funds, shall endeavor to minimize costs of administration so that a maximum amount of the funds will be used for providing training and support to correctional peace officers, while being trained, by the departments." (Stats. 1983, ch. 1074, § 1, p. 3787.)

Legislative history indicates the statute's original purpose was to mandate training at the Galt academy. According to an analysis prepared by the Senate Committee on the Judiciary reviewing the proposed statute, "[i]t is the intent of the [L]egislature, for purposes of economies of scale, to mandate the joint use, by each department, of the training academy at Galt." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 945 (1983–1984 Reg. Sess.).)

In 1998, the Legislature amended section 13602 to require the Department of Corrections to train at the Galt academy and the Department of the Youth Authority to train at the Stockton academy. Apparently, by then the Department of the Youth Authority was already conducting training in Stockton. Legislative history indicated existing law required the Department of Corrections and the Department of the Youth Authority "to jointly use the training academy at Galt. . . . [¶] [The proposed amendment] requires the Department of the Youth Authority to use instead the training academy at Stockton (in fact, the Department of Youth Authority has been using the Stockton facility for some time)." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 271 (1997–1998 Reg. Sess.) as amended June 18, 1997, pp. 5–6.)

The Legislature revised section 13602 to mandate the departments continue training at their respective academies. The statute read: "(a) The Department of Corrections shall use the training academy at Galt. This academy shall be known as the Richard A. McGee Academy. The Department of the Youth Authority shall use the training center at Stockton. The training divisions, in using the funds, shall endeavor to minimize costs of administration so that a maximum amount of the funds will be used for providing training and support to correctional peace officers while being trained by the departments." (Stats. 1998, ch. 762, § 5, p. 4996.)

In 2005, the Legislature created the CDCR, an omnibus penal organization vested with authority over all activities that had been performed by the former Department of Corrections, the former Department of the Youth Authority, and other correctional entities. As part of that consolidation, the Legislature amended section 13602, subdivision (a), to read as it does now: "(a) The Department of Corrections and Rehabilitation may use the training academy at Galt or the training center in Stockton. The academy at Galt shall be known as the Richard A. McGee Academy. The training divisions, in using the funds, shall endeavor to minimize costs of administration so that a maximum amount of the funds will be used for providing training and support to correctional peace officers while being trained by the department." (Stats. 2005, ch. 10, § 68, p. 29.)

The legislative history indicates this amendment was limited to allowing the new CDCR to use both training academies. According to the Senate Committee on Public Safety, "Current law requires the Department of Corrections to use the training academy at Galt. And the Department of the Youth Authority to use the training center at Stockton. (Penal Code § 13602.) [¶] This bill is identical to [Governor's Reorganization Plan 1] and would revise this provision to *authorize* the new Department of Corrections and Rehabilitation *to use both of these facilities*." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 737 (2005–2006 Reg. Sess.) as amended Mar. 29, 2005, p. M, italics added.)

This history shows the Legislature used the word "may" in section 13602 only to grant CDCR permission to use both training academies at Galt and Stockton. The Legislature in the past strictly limited the Department of Corrections and the Department of the Youth Authority to conduct their training at Galt and Stockton. Now that the duties of those agencies fall under one, new agency, the Legislature has specifically authorized more flexibility; that is, it authorized CDCR to train correctional officers at either the Galt or Stockton training academies. Nothing in this history indicates the Legislature intended to expand CDCR's authority to conduct training anywhere other than at the Galt and Stockton academies.

■ This interpretation is also driven by section 13602's use of the word "or." Giving that word its common meaning, the Legislature granted CDCR in section 13602 authority to use either the Galt academy or the Stockton academy. Because this disjunctive works as a limitation, it indicates the grant of authority to CDCR was limited to using Galt and Stockton.

■ This interpretation is consistent with the statutory context in which section 13602 appears. Section 13603 requires CDCR to provide 16 weeks of training to each correctional peace officer cadet. (§ 13603, subd. (a).) Section 13602 states CDCR may use the academies at Galt and Stockton to conduct this training. Tellingly, section 13602.1, adopted in 2007, states CDCR "may establish a training academy for correctional officers in southern California." If the Legislature, by inserting the word "may" into section 13602 in 2005, had intended to vest CDCR with authority to establish academies anywhere in the state, it would not have needed to grant CDCR express authority two years later in 2007 to establish an academy in southern California.

■ The adoption of section 13602.1 confirms the Legislature has never intended to grant CDCR authority to conduct academies wherever it chooses. To hold otherwise would negate both the pivotal sentences in section 13602 and section 13602.1 as surplusage, an act of statutory construction we are required to avoid. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 931 [22 Cal.Rptr.3d 530, 102 P.3d 915].) Where permissive use of the word "may" renders criteria in a statute illusory, particularly one involving a public duty, "may" means "must." (*Hess Collection Winery v. Agricultural Labor Relations Bd.* (2006) 140 Cal.App.4th 1584, 1606–1607 [45 Cal.Rptr.3d 609].)

■ Another enactment in the statutory scheme confirms the Legislature intended CDCR to conduct its training at the Galt or Stockton academies and nowhere else. Under section 13603, CDCR is to provide 16 weeks of training unless it and CCPOA agree that CDCR will provide 12 weeks of training at "the department's training academy" and the remaining four weeks at the institution where the cadet is assigned to a position. (§ 13603, subds. (a), (b).) The reference to the CDCR's "training academy" naturally refers to the training academies mentioned in section 13603, those in Galt and Stockton. Implicit in section 13603 is that all training happens at the Galt and Stockton academies unless an agreement provides for the last four weeks of training to occur at the individual cadet's assigned institution. There is no authorization for CDCR to conduct basic training anywhere else.

CDCR disagrees with this conclusion. It claims we should interpret "may" permissively because section 13602, subdivision (a), uses the mandatory word "shall" in its other sentences, e.g., "The academy at Galt shall be known as the Richard A. McGee Academy." Because the Legislature used

"shall" in parts of subdivision (a) but used "may" in another sentence regarding the location of training, CDCR argues we must interpret "may" permissively. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117 [81 Cal.Rptr.2d 471, 969 P.2d 564] ["Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning."].)

CDCR's argument fails to acknowledge that "may" does not stand alone in the first sentence of section 13602, subdivision (a). It is linked to an "or," which we have already stated acts to limit the discretion the Legislature vested in CDCR when it amended the statute to use "may." "May" in this instance is permissive to the extent it allows CDCR to choose to train future correctional peace officers at Galt or Stockton, but the statute's use of "or" defines the extent of CDCR's discretion.

CDCR claims section 13602's requirement that it minimize costs to ensure the maximum amount of funding is available for training shows the Legislature intended to allow CDCR to conduct training in more places. CDCR's claim reads too much into the statutory language.

After requiring CDCR to conduct its training at the Galt or Stockton academies, the relevant sentence in section 13602, subdivision (a), reads: "The training divisions, in using the funds, shall endeavor to minimize *costs of administration* so that a maximum amount of the funds will be used for providing training and support to correctional peace officers while being trained *by the department*." (Italics added.)

■ The statute does not authorize CDCR to increase its administrative costs by opening new training academies besides operating the Galt and Stockton academies. Instead, it directs CDCR to reduce its administrative costs so that all available funds are used to support the training done by the CDCR—at its Galt and Stockton academies.

■ CDCR argues section 13602.1's enactment and authorization of an academy in Southern California does not undermine its proposed reading of section 13602 because section 13602.1 was part of an appropriation bill. However, the bill that enacted section 13602.1 did not appropriate any funds toward developing a Southern California training center. (Stats. 2007, ch. 7, § 27.) Thus, section 13602.1 is not an appropriation towards a new academy already authorized. Rather, it is the authorization to develop a new academy, an authorization needed because CDCR has no authority to conduct training outside of its Galt and Stockton academies.

Moreover, the very legislative history CDCR cites to support its argument, confirms the Legislature, and not CDCR, holds and maintains the authority to

determine where training academies may be located.[4] According to Legislative Counsel, the bill enacting section 13602.1 "would *authorize* [CDCR] to establish a training academy for correctional officers in southern California." (Legis. Counsel's Dig., Assem. Bill No. 900 (2007–2008 Reg. Sess.), italics added.) The Senate Rules Committee stated the bill "[*a*]*uthorizes*" a training academy in Southern California. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 900 (2007–2008 Reg. Sess.) as amended Apr. 26, 2007, p. 6, italics added.) Section 13602.1 is an express, but limited, delegation of authority. It has no purpose if section 13602 authorizes CDCR to establish training academies wherever it chooses.

■ For all of the above reasons, we conclude section 13602, subdivision (a), authorizes CDCR to conduct training in Galt or Stockton, and nowhere else.

### DISPOSITION

The judgment is reversed. Costs on appeal are awarded to CCPOA. (Cal. Rules of Court, rule 8.278(a).)

Raye, P. J., and Blease, J., concurred.

---

[4] We grant CDCR's request for judicial notice. (Evid. Code, §§ 452, 459.)