Filed 1/27/21  Trovato v. Je CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DANIEL TROVATO et al., | B301033 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. BC592184 |
| WHANKUK JE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge. Affirmed.

The Law of Office of Roland Ho and Roland Ho for Plaintiffs and Appellants.

Marh & Associates and Rosa Kwong for Defendant and Respondent.

# INTRODUCTION

Daniel Trovato[1] and James Coberly (collectively, plaintiffs) sued Whankuk Je, the owner of Rookies Sports Bar (Rookies), and Valarina Pedicini, as trustee of the Valarina Pedicini Trust, the owner of the land where Rookies is located[2] (collectively, defendants), after plaintiffs were assaulted outside of the bar by one of the bar's other customers. Defendants moved for summary judgment, asserting they didn't owe a duty to protect plaintiffs because the assault was not foreseeable. The court granted the motion and entered judgment in defendants' favor. Plaintiffs appeal, arguing the summary judgment motion was procedurally flawed and a triable issue exists as to whether defendants owed plaintiffs a duty to ensure their safety on the night of the attack. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. The Assault

Je owns Rookies, a bar in La Mirada. Je is not involved in the day-to-day operation or management of the bar, nor does he visit the bar very often. Instead, Je hired his ex-girlfriend Hye Kyung Son, who goes by Katherine, to "run[] everything" and "take[] care of all the management." Prior to the assault in this case, Je wasn't aware of any criminal activity at the bar. Nor was

---

[1] Trovato's last named is also spelled as "Trovator" in the reporter's transcript.

[2] After filing their appeal but before briefing was finished, plaintiffs settled with, and dismissed their appeal as to, Pedicini. Accordingly, Pedicini is no longer a party to this appeal.

Katherine aware of any past incidents of violence involving the bar.

According to Katherine, the bar usually has a doorman on Friday and Saturday nights if it's busy enough. The doorman is responsible for checking customers' identification, making sure drunk people don't enter the bar, and "maintain[ing] peace within the bar."

On a Saturday night in mid-July 2014, Trovato and Coberly went to Rookies. A doorman wasn't working that night because business was "slow." When plaintiffs were there, the bar had nine security cameras. While at least one of the cameras was installed inside the bar and directed at the area where the bartender worked, it is unclear where the other cameras were located.

Sometime after midnight, Coberly went outside to smoke a cigarette. Coberly was smoking near the entrance when Antonio Rodriguez, who also was a customer at the bar, went outside and started talking to him. Trovato followed Rodriguez out of the bar. Trovato and Coberly "exchanged pleasantries" with Rodriguez.

After Rodriguez went inside for a few moments, he came back out and started talking to Trovato and Coberly again. Rodriguez then walked to a "blacktop-like alleyway" adjacent to the bar, at which point he said to plaintiffs, " 'Hey, come check this out.' "[3] As Trovato approached, Rodriguez asked him, " 'Do

---

[3] Security footage from inside the bar shows Coberly's and Trovato's interaction with Rodriguez while they're standing outside near the front entrance. The footage shows Rodriguez, Coberly, and Trovato walk to the left of the front entrance, if looking from inside the bar facing the door, presumably toward the "blacktop-like alleyway," before the three men leave the screen. A little more than a minute after the men walk off screen, Rodriguez runs back inside the bar and appears

you think you can kick my ass?' " When Coberly followed, Rodriguez asked him if he was Trovato's "pussy protector." Coberly was confused and didn't know how to respond. Rodriguez then attacked Trovato and punched Coberly in the face, knocking him out. When Coberly regained consciousness he was outside sitting against a building while a crowd surrounded Trovato, who was lying in a pool of blood.

## 2. The Lawsuit

Trovato and Coberly sued Rookies, Je, and Pedicini for negligence.[4] As to Rookies and Je, plaintiffs alleged they breached their duty to ensure plaintiffs' safety because prior to the underlying assault Je or the bar's management was aware, or should have been aware, that incidents of violence occurred on or near the bar's property, but nevertheless failed to: (1) install security cameras around the area where the attack occurred; (2) have a security guard on duty the night of the attack; (3) control customers who go in and out of the bar to smoke; (4) maintain and monitor a safe area where customers can smoke while drinking at the bar; and (5) establish reasonable procedures that could have tracked prior similar incidents of violence that occurred at or near the bar.

Defendants moved for summary judgment, arguing they owed no duty to plaintiffs to provide heightened security

---

to say or signal something to his friends before running out of view of the camera. The footage has no audio.

[4] Although Rookies is listed as a separate defendant and identified in the complaint as both a corporation and a sole proprietorship owned and controlled by Je, judgment was entered only in favor of Je as an individual and doing business as Rookies.

measures at the bar because Rodriguez's assault was not foreseeable and, in any event, plaintiffs assumed any risk of harm by agreeing to follow Rodriguez to the location of the attack. Plaintiffs opposed summary judgment, arguing, among other things, the assault was foreseeable because incidents of violence had occurred at Rookies prior to the underlying assault and, in light of those prior incidents, defendants failed to take any reasonable measures to ensure plaintiffs' safety while smoking outside near the bar's entrance. Plaintiffs also argued they didn't assume any risk of harm when they agreed to follow Rodriguez to the location of the attack because there was no indication that Rodriguez was going to beat up the plaintiffs.

In support of their opposition, plaintiffs submitted, among other things, copies of logs from the Los Angeles Sheriff's Department tracking what appear to be emergency calls and dispatch notes concerning various types of incidents that occurred near the bar's location between January 1, 2010 and May 31, 2015. Although they included a declaration from the duly authorized custodian of records authenticating the logs, plaintiffs didn't submit any evidence explaining who made the documented calls, why those calls were made, and what evidence, if any, was found to corroborate the calls.

Plaintiffs also submitted a copy of a report from a sheriff's detective who interviewed one of the bartenders about a day after the assault. The bartender claimed he was at the bar, but not working, on the night of the assault.[5] He didn't see the attack, however, because he was outside on a different side of the

---

[5] At her deposition, Katherine testified that the bartender was working that night.

building smoking a cigarette. When he came back inside, he saw two men leave the bar "in a hurry." He then walked out the front door and saw a group of people standing near an alley, where Trovato was lying on the ground "bleeding profusely from the face and head." The bartender tended to Trovato until paramedics arrived.

The bartender recognized Rodriguez from a photograph. According to the bartender, Rodriguez was the "most aggressive" of the group of people Rodriguez was drinking with that night.

Following a hearing, the court issued a written ruling granting summary judgment in defendants' favor.[6] The court found defendants met their initial burden to show Rookies owed no duty to protect plaintiffs from Rodriguez's assault and that plaintiffs failed to raise a triable issue of fact as to that issue. Specifically, the court found there was no evidence to support a finding that defendants or anyone who worked for the bar were aware that Rodriguez was likely to engage in violent behavior on the night of the incident or had engaged in violent behavior in the past, or that prior incidents of violence had occurred at the bar, requiring defendants to provide heightened security measures on the night of the assault.

---

[6] The court sustained plaintiffs' objections to the assertions in defendants' separate statement of undisputed facts that plaintiffs shared two pitchers of beer and had five shots of liquor and that Coberly was drunk at the time of the assault. The court also sustained defendants' objection that call logs from the Sheriff's Department lack foundation and personal knowledge to the extent "they are based on narrations from third parties." The court overruled defendants' objection to the call logs to the extent they "are admissible to prove that the police responded to the bar, as well as the fact of any arrest." The court did not rule on any of defendants' other objections.

The court entered judgment in defendants' favor. Plaintiffs appeal.

**DISCUSSION**

## 1.    General Principles of Summary Judgment and Standard of Review

A court may grant summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 (*Merrill*).) A defendant who moves for summary judgment must show that one or more elements of the plaintiff's claim cannot be established or that there exists a complete defense to the claim. (Code Civ. Proc.,[7] § 437c, subd. (p)(2).) If the defendant makes a sufficient showing, the burden shifts to the plaintiff to present evidence establishing a triable issue of material fact. (*Ibid.*) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

We independently review a trial court's ruling on a motion for summary judgment. (*Aguilar, supra*, 25 Cal.4th at p. 860.) We liberally construe the evidence in favor of the opposing party and resolve all doubts about the evidence in that party's favor. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) We consider all evidence the parties submit in connection with the motion, except that which the court properly excluded. (*Merrill, supra*, 26 Cal.4th at p. 476.)

---

[7] All undesignated statutory references are to the Code of Civil Procedure.

**2.  Plaintiffs forfeited their claim that service of the motion for summary judgment was defective.**

As a threshold matter, plaintiffs insist we must reverse the order granting summary judgment because service of the motion was untimely under section 437c, subdivision (a)(2) and effectuated via e-mail, a method of service to which plaintiffs did not consent. Although plaintiffs challenged the method of service of the motion in the trial court, they never argued service was untimely. (See *Credit Suisse First Boston Mortgage Capital, LLC v. Danning, Gill, Diamond & Kollitz* (2009) 178 Cal.App.4th 1290, 1301 [statutorily mandated minimum notice period for summary judgment may be waived by the parties].) Issues that could have been but were not raised in the trial court are generally forfeited on appeal. (*Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559, 576.) Plaintiffs fail to explain why they did not or could not challenge the timeliness of the motion's service in the trial court. We therefore decline to address that issue on appeal.

As for plaintiffs' contention that the order granting summary judgment must be reversed because they never consented to electronic service, we reject that argument for a couple of reasons. First, plaintiffs cite no authority to support their argument that the form of service was improper. Although they cite to section 437c, subdivision (a)(2), and three cases interpreting that statute, that provision and the cited cases discuss only when a summary judgment must be served. (See *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 636–637; *McMahon v. Superior Court* (2003) 106 Cal.App.4th 112, 116; *Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 756, 764–765.) While that statute establishes notice periods for service via mail,

8

facsimile, or other forms of "delivery," it says nothing about whether a motion may be served electronically without the opposing party's consent. (See § 437c, subd. (a)(2).) By failing to cite any relevant authority, plaintiffs have not adequately developed this argument. (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799 [appellant's failure to support claim with reasoned argument and citations to authority permits the reviewing court to treat that claim as waived].)

Second, plaintiffs opposed the summary judgment motion on the merits in the trial court and never asked for a continuance or asserted they were prejudiced by the method of service utilized by defendants. Nor do plaintiffs explain in their appellate briefs how they were prejudiced by defendants' purported electronic service of the motion.[8] Plaintiffs, therefore, forfeited any challenge to the method of service of the summary judgment motion in this case. (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 [plaintiffs' opposition to the summary judgment motion on the merits and their failure to request a continuance or assert they were prejudiced by the improper service of the motion waived any claims that the service of the motion was defective]; see also Cal. Const., art. VI, § 13 ["No judgment shall be set aside … in any cause … for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)

---

[8] We note that the proof of service states that the summary judgment motion was served by personal service, not electronic service, on February 1, 2019. We also note that although the hearing was originally scheduled for April 3, 2019, plaintiffs agreed to continue it to April 22, 2019, and the hearing was conducted on May 1, 2019.

3. **The trial court did not err in granting summary judgment.**

To establish a claim of negligence, a plaintiff must show the defendant owed the plaintiff a legal duty and the defendant's breach of that duty caused the plaintiff's damages or injuries. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 678 (*Ann M.*), disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5 (*Reid*).) The primary issue in this case is whether Rookies owed plaintiffs a duty to protect them from Rodriguez's assault.

As a general rule, defendants don't owe a duty to protect others from the criminal acts of third parties. (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 234–235 (*Delgado*).) It is well settled, however, that businesses, such as restaurants, bars, and shops, owe a duty to their patrons to maintain their premises in a reasonably safe condition and to " 'take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures.' [Citations.]" (*Id.* at p. 235, italics omitted.)

The scope of a business's duty to protect its patrons from third party crime is " 'determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. [Citation.] " '[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required.' [Citation.]" ' [Citation.]" (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213–1214 (*Castaneda*).)

10

As the Supreme Court explained in *Delgado*, the duty to hire security guards, to provide improved lighting, to install security cameras, or to require existing personnel to patrol the business's premises generally requires a high degree of foreseeability before it may be imposed on a business. (*Delgado*, *supra*, 36 Cal.4th at pp. 238, 239–240.) To prove there was a heightened foreseeability of third-party criminal activity on a business's premises, the plaintiff must provide evidence of "prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location." (*Id.* at p. 240.) The existence and scope of a business's duty to protect against third party criminal acts and the foreseeability necessary to establish that duty are questions of law for the court to resolve. (*Castaneda*, *supra*, 41 Cal.4th at p. 1213; *Ann M.*, *supra*, 6 Cal.4th at p. 678.)

Defendants met their initial burden to negate the duty element of plaintiffs' negligence claim. Je testified that he wasn't aware of any criminal activity occurring on or near the bar's property prior to Rodriguez's assault. Katherine, the bar's manager, also testified that she wasn't aware of any prior incidents of violence at the bar and that none of the bar's employees had ever reported any similar incidents. Thus, defendants presented evidence that Rodriguez's assault was not foreseeable and, as a result, Rookies did not owe plaintiffs a duty to utilize heightened security measures to protect them from that assault. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1189–1199, disapproved on another ground in *Reid*, *supra*, 50 Cal.4th at p. 527, fn. 5 [owner of commercial garage owed no duty to plaintiff who was raped in the garage to hire security guards, install improved lighting, reinstall video cameras, or require

11

existing employees to patrol the property where there was no evidence of similar crimes occurring on the property in the past].)

The burden, therefore, shifted to plaintiffs to present evidence that Rodriguez's assault was sufficiently foreseeable to require Rookies to provide security measures that would have prevented the attack. Plaintiffs failed to meet that burden because they didn't present evidence of prior similar criminal acts occurring at or near Rookies or "other indications of a reasonably foreseeable risk of violent criminal assaults" at the bar. (*Delgado*, *supra*, 36 Cal.4th at p. 240.)

As for the Sheriff's Department's call logs, those documents don't raise a triable issue concerning the foreseeability of Rodriguez's assault. While those documents support a finding that calls were made to the Sheriff's Department concerning potential criminal conduct occurring around the bar, they do not, by themselves, support a finding that the conduct actually occurred or that Je, Katherine, or anyone else employed by the bar at the time of Rodriguez's assault was aware of those incidents. For instance, plaintiffs didn't present evidence to establish context for the calls, such as who made them and whether any evidence was found to confirm the alleged conduct actually occurred. And while some of the call logs involve alleged violent conduct occurring around Rookies, nothing in the logs indicates that Je, Katherine, or any of the employees who worked for the bar at the time of the assault in this case were notified of that conduct. In any event, plaintiffs concede in their opening brief that the logs themselves cannot be used to prove the incidents alleged in the documented calls actually occurred. Plaintiffs presented no other evidence that would support a finding that similar criminal conduct occurred at or near Rookies

12

such that Rodriguez's assault would have been foreseeable to Je, Katherine, or anyone employed by the bar at the time plaintiffs were attacked.

Nor did plaintiffs present evidence that Rodriguez's assault was otherwise foreseeable. At their depositions, both Coberly and Trovato testified that, prior to the assault, Rodriguez appeared friendly and jovial when they first met him outside the bar. And nothing in the video footage of plaintiffs' interaction with Rodriguez preceding the assault suggests Rodriguez was likely to engage in violent activity. Indeed, in opposing defendants' claim that they assumed the risk of the assault, plaintiffs repeatedly took the position that the attack was not foreseeable because of Rodriguez's gregarious behavior immediately before the assault. While plaintiffs presented the detective's report in which one of the bartenders stated he recognized Rodriguez because he was the most "aggressive" of the group of men he left the bar with on the night of the attack, the bartender did not explain in what way Rodriguez appeared to be "aggressive," nor did he tell the detective that he saw Rodriguez engage in any threatening or violent behavior that would have made the assault foreseeable.

We also reject plaintiffs' argument that because Rookies sometimes employed a doorman on Friday and Saturday nights, the bar had a duty to employ a doorman on the Saturday night when plaintiffs were attacked. Defendants introduced uncontradicted evidence that the bar did not have a policy of employing a doorman every Friday and Saturday night. Rather, as Katherine testified, the bar's policy was to employ a doorman only on nights when it was busy enough to do so. Because business was slow on the night of the attack, the bar opted not to use a doorman. In any event, it is the foreseeability of third-party

13

criminal activity, not the business's history of employing bouncers or other security measures, that determines whether the business had a duty to use such measures at the time a patron was injured by third-party conduct on the business's property. (See *Delgado*, *supra*, 36 Cal.4th at pp. 247–250.) Because there was no evidence to support a finding that Rodriguez's assault was foreseeable, Rookies did not owe plaintiffs a duty to employ a doorman on the night of the attack.

In short, defendants met their initial burden to negate the duty element of plaintiffs' negligence claim. Plaintiffs failed to raise a triable issue that Rodriguez's assault was sufficiently foreseeable such that Rookies owed plaintiffs a duty to employ heightened security measures on the night of the attack, like hiring a doorman or installing additional security cameras. The court, therefore, properly granted summary judgment in Je's favor.

## DISPOSITION

The judgment is affirmed. Je is awarded costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                     LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.

15