Filed 3/26/19; Modified and Certified for Pub. 4/22/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SUSTAINABILITY, PARKS, RECYCLING AND WILDLIFE DEFENSE FUND (SPRAWLDEF), | C066582 |
| Plaintiff and Appellant, | (Super. Ct. No. 34200980000301) |
| v. | |
| DEPARTMENT OF RESOURCES RECYCLING AND RECOVERY et al., | |
| Defendants and Respondents; | |
| WASTE CONNECTIONS, INC., et al., | |
| Real Parties in Interest and Respondents. | |

This case involves issuance of a revised permit for the Potrero Hills Landfill in Solano County, pursuant to the California Integrated Waste Management Act (the Waste Management Act; Pub. Resources Code, § 40000 et seq.).[1] Appellant Sustainability, Parks, Recycling and Wildlife Defense Fund (SPRAWLDEF) contends the revised

---

[1] Undesignated statutory references are to the Public Resources Code in effect at the time of the relevant events, except where otherwise noted.

1

permit is improper because it allows expanded operations not in conformance with the "countywide siting element" (§§ 41700-41701; Cal. Code Regs., tit. 14, § 18755 et seq.)[2] of Solano County's countywide integrated waste management plan (CIWMP). (§§ 41750-41750.1 [elements to be included in CIWMP].)

SPRAWLDEF appeals from the trial court's denial of its petition for a writ of administrative mandamus (§ 45042; Code Civ. Proc., § 1094.5), which was filed against: (1) the County Department of Resource Management as the local enforcement agency (LEA) (§§ 40130, 43200) for integrated waste management, which granted the revised permit and rejected SPRAWLDEF's administrative challenge to the revised permit; (2) the former California Integrated Waste Management Board (the Board), which has since been replaced by the California Department of Resources, Recycling and Recovery (DRRR),[3] which declined to entertain an administrative appeal (§ 45031),[4] on the grounds that (a) SPRAWLDEF failed to exhaust administrative remedies by failing to assert the conformance issue at the County level, and (b) that the conformance argument lacked merit because the only statutory requirement for expansion is in section 50001,

---

[2] "Regulations" references are to title 14 of the California Code of Regulations in effect at the time of the events discussed herein.

[3] Though DRRR replaced the Board in 2009 (§§ 40400-40401), some statutes continue to use the term "Board." The Legislature did not amend the statutes but instead stated in section 40400 that, "[a]ny reference in any law or regulation to [the Board] shall hereafter apply to the Department of Resources Recycling and Recovery. . . ." We shall use the term "Board" because that was the entity which handled this case.

[4] Section 45031 states: "Within 30 days from the date that an appeal is filed with the [B]oard, the [B]oard may do any of the following: [¶] (a) Determine not to hear the appeal if the appellant fails to raise substantial issues. [¶] (b) Determine not to hear the appeal if the appellant failed to participate in the administrative hearing [without good cause]. . . . [¶] (c) Determine to accept the appeal and to decide the matter on the basis of the record before the hearing panel, or based on written arguments submitted by the parties, or both. [¶] (d) Determine to accept the appeal and hold a hearing, within 60 days, unless all parties stipulate to extending the hearing date."

subdivision (a), which allows expansion as long as the *location* of the landfill is identified in the countywide siting element (§ 50001);[5] and (3) real parties in interest—Waste Connections, Inc., and Potrero Hills Landfill, Inc. (collectively, Potrero Hills)—which are the owners/operators of the landfill.[6]

In this court, SPRAWLDEF reasserts its conformance argument and claims the Board, as an *administrative* body, had no right to invoke the *judicial* doctrine of failure to

---

[5]  Section 50001 states:  "(a) Except as provided by subdivision (b), after a countywide or regional agency integrated waste management plan has been approved by [DRRR] pursuant to Division 30 (commencing with Section 40000), no person shall establish or expand a solid waste facility, as defined in Section 40194, in the county unless the solid waste facility meets one of the following criteria:  [¶]  (1) The solid waste facility is a disposal facility or a transformation facility, *the location* of which is identified in the countywide siting element or amendment thereto, which has been approved pursuant to Section 41721.  [¶]  (2)  The solid waste facility is a facility which is designed to, and which as a condition of its permit, will recover for reuse or recycling at least 5 percent of the total volume of material received by the facility, and which is identified in the nondisposal facility element or amendment thereto, which has been approved pursuant to Section 41800 or 41801.5.  [¶]  (b) Solid waste facilities other than those specified in paragraphs (1) and (2) of subdivision (a) shall not be required to comply with the requirements of this section.  [¶]  (c) The person or agency proposing to establish a solid waste facility shall prepare and submit a site identification and description of the proposed facility to the task force established pursuant to Section 40950 [county convenes local task force every five years to assist in development of goals and plans]. Within 90 days after the site identification and description is submitted to the task force, the task force shall meet and comment on the proposed solid waste facility in writing. These comments shall include, but are not limited to, the relationship between the proposed solid waste facility and the implementation schedule requirements of Section 41780 and the regional impact of the facility.  The task force shall transmit these comments to the person or public agency proposing establishment of the solid waste facility, to the county, and to all cities within the county.  The comments shall become part of the official record of the proposed solid waste facility.  [¶]  (d) The review and comment by the local task force required by subdivision (c) for amendment to an element may be satisfied by the review required by subdivision (a) of Section 41734 for an amendment to an element."  (Italics added.)

[6]  The previous owner/operator, Republic Services, Inc., was named in the petition but was dismissed, and the current owners were substituted.

exhaust administrative remedies to decline to hear SPRAWLDEF's administrative appeal. SPRAWLDEF also complains the Board deliberated in closed session, in violation of the Bagley-Keene Open Meeting Act (Gov. Code, § 11120 et seq.).

We conclude SPRAWLDEF failed to preserve the conformance issue at all stages of the administrative proceedings. The Board was not required to entertain the administrative appeal. To the extent the Board nevertheless addressed the merits, given the statutory language, SPRAWLDEF fails to demonstrate reversible error. As to the open meeting law, we conclude that even if closed session deliberations were improper, SPRAWLDEF fails to show prejudice warranting the nullification remedy it seeks.

We affirm.[7]

### STATUTORY/REGULATORY OVERVIEW

The Waste Management Act establishes a comprehensive program for solid waste management. (§ 40002.) It established the Board, and subsequently DRRR, with power to enforce the Waste Management Act with corrective action orders, cease and desist orders, cleanup orders, and civil penalties. (§§ 40400-40510, 43300, 45000, 45005, 45010-45024; *San Elijo Ranch, Inc. v. County of San Diego* (1998) 65 Cal.App.4th 608, 613-614 (*San Elijo Ranch*).) Section 40052 states: "The purpose of this division is to reduce, recycle, and reuse solid waste generated in the state to the maximum extent feasible in an efficient and cost-effective manner to conserve water, energy and other natural resources, to protect the environment, to improve regulation of existing solid waste landfills, to ensure that new solid waste landfills are environmentally sound, to improve permitting procedures for solid waste management facilities, and to specify the

---

[7] As we explain *post*, we deny the County LEA's request for judicial notice filed August 8, 2012, while this appeal was pending.

We note the administrative record appears to be missing pages 7 and 8, but it does not appear they are of consequence to this appeal.

4

responsibilities of local governments to develop and implement integrated waste management programs."

The Waste Management Act also authorizes the establishment of local enforcement agencies (LEAs), which have broad duties and powers (§§ 43200-43209), including issuance of solid waste permits to operate landfills (§ 44001), inquiry into the violation of the terms or conditions of solid waste permits (§ 43200; Regs., §§ 18302-18303), temporary suspension of permits (§ 44305, subd. (a)), issuance of cease and desist orders (§ 45005), assessment of civil penalties (§ 45011), issuance of notices and orders requiring correction of permit violations (§ 45000, subd. (a); Regs., § 18304), and, in the absence of correction, initiation of judicial proceedings (Regs., § 18304).

The Waste Management Act expressly provides that "the responsibility for solid waste management is a shared responsibility between the state and local governments" (§ 40001, subd. (a)), and that local governmental responsibilities "are integral to the successful implementation" of the Waste Management Act. (Former § 40703.) DRRR consults and coordinates with LEAs. (Former § 40703, §§ 40910, 41791.2, 42500, 42501, 42511, 42540, 42600, 42650, 43217, 43301, 43307, 47103.) DRRR may investigate LEA performance (§ 43216.5) and initiate judicial action if it finds that the LEA has failed to take appropriate steps. (Regs., § 18350; see also *San Elijo Ranch, supra*, 65 Cal.App.4th at p. 613.)

As part of its CIWMP (§ 40900), "[e]ach county shall prepare a countywide siting element which provides a description of the areas to be used for development of adequate transformation[8] or disposal capacity concurrent and consistent with the development and

---

**8** " 'Transformation' means incineration, pyrolysis, distillation, or biological conversion other than composting. [It] does not include composting, gasification, or biomass conversion." (§ 40201.)

implementation of the county and city source reduction and recycling elements adopted pursuant to this part." (§ 41700.)

Under section 41701, "Each countywide siting element and revision thereto shall include, but is not limited to, all of the following:  [¶]  (a) A statement of goals and policies for the environmentally safe transformation or disposal of solid waste that cannot be reduced, recycled, or composted.  [¶]  (b) An estimate of the total transformation or disposal capacity in cubic yards that will be needed for a 15-year period to safely handle solid wastes generated with the county that cannot be reduced, recycled, or composted. [¶]  (c) The remaining combined capacity of existing solid waste transformation or disposal facilities existing at the time of the preparation of the siting element, or revision thereto, in cubic yards and years.  [¶]  (d) The identification of an area or areas for the location of new solid waste transformation or disposal facilities, or the expansion of existing facilities, that are consistent with the applicable city or county general plan,[9] if the county determines that existing capacity will be exhausted within 15 years or additional capacity is desired.  [¶]  (e) For countywide elements submitted or revised on or after January 1, 2003, a description of the actions taken by the city or county to solicit public participation by the affected communities, including, but not limited to, minority and low-income populations."

---

**9** Section 41702 provides:  "An area is consistent with the city or county general plan if all of the following requirements are met:  [¶]  (a) The city or county adopted a general plan which complies with the requirements of Article 5 (commencing with Section 65300) of Chapter 3 of Division 1 of Title 7 of the Government Code.  [¶]  (b) The area reserved for a new solid waste facility or the expansion of an existing solid waste facility is located in, or coextensive with, a land use area designated or authorized for solid waste facilities in the applicable city or county general plan.  [¶]  (c) The land use authorized in the applicable city or county general plan adjacent to or near the area reserved for the establishment of new solid waste transformation or disposal of solid waste or expansion of existing facilities is compatible with the establishment or expansion of the solid waste facility."

6

Anyone who wants to operate a solid waste facility must apply to the LEA for a permit.  (§ 44001.)

Permit holders who wish to change the design or operation of the landfill must comply with section 44004, which provides in pertinent part:  "(a) An operator of a solid waste facility shall not[10] make a significant change in the design or operation of the solid waste facility that is not authorized by the existing permit, unless the change is approved by the enforcement agency [LEA], the change conforms with this division and all regulations adopted pursuant to this division [§ 43020 authorizing Board to adopt and revise regulations, which set forth minimum standards for solid waste handling, transfer, composting, transformation, and disposal], and the terms and conditions of the solid waste facilities permit are revised to reflect the change.  [¶]  (b) If the operator wishes to change the design or operation of the solid waste facility in a manner that is not authorized by the existing permit, the operator shall file an application for revision of the existing solid waste facilities permit with the enforcement agency. . . .  [¶]  (c) The enforcement agency shall review the application to determine all of the following:  [¶] (1) Whether the change conforms with this division and all regulations adopted pursuant to this division.  [¶]  (2) Whether the change requires review pursuant to Division 13 (commencing with Section 21000) [the California Environmental Quality Act (CEQA)]. [¶]  (d) Within 60 days from the date of the receipt of the application for a revised permit, the enforcement agency shall inform the operator, and if the enforcement agency is a [LEA], also inform the [B]oard, of its determination to do any of the following:  [¶]  (1) Allow the change without a revision to the permit.  [¶]  (2) Disallow the change because

---

10  A 2011 amendment substituted "shall not" for "may not."  (Stats. 2011, ch. 476, § 14.) This did not change the meaning; " 'may' " can be mandatory where permissive use would render a statute's criteria illusory.  (*California Correctional Peace Officers Assn. v. Tilton* (2011) 196 Cal.App.4th 91, 99.)

7

it does not conform with the requirements of this division or the regulations adopted pursuant to this division.  [¶]  (3) Require a revision of the solid waste facilities permit to allow the change.  [¶]  (4) Require review under Division 13 (commencing with Section 21000) before a decision is made."**11**  (§ 44004, subds. (a)-(d)(4).)

Section 44004, subdivision (h)(2)(i)(1), requires the Board, "to the extent resources are available, [to] adopt regulations that . . . define the term 'significant change in the design or operation of the solid waste facility that is not authorized by the existing permit.' "  The only such regulation we found in effect at the time of the relevant events here is in the CEQA regulations, California Code of Regulations, title 27, section 21563, subdivision (d)(6), which states:  " 'Significant Change in the design or operation of the solid waste facility that is not authorized by the existing permit' means a change in design or operation of a solid waste facility where the [L]EA has determined pursuant to § 21665 that the change is of such consequence that the solid waste facilities permit needs to include further restrictions, prohibitions, mitigations, terms, conditions or other measures to adequately protect public health, public safety, ensure compliance with State minimum standards or to protect the environment.  The definition is only for purposes of

---

**11**  The provision allowing changes through modification, rather than revision, of the permit, was added in 2011 (§ 44004, amended by Stats. 2011, ch. 476, § 14, eff. Jan. 1, 2012), after the events at issue in this appeal.  The legislative history of the 2011 legislation includes a bill analysis stating:  "An operator of a solid waste facility cannot make a significant change to design or operation unless specified criteria are met and approved by the LEA.  And, depending on the modification, the [Board] must also approve the change.  This bill attempts to clarify that if an operator is proposing changes to the facility that are within the permitted parameters that those changes would trigger a permit modification rather than a full permit revision.  However, the language proposed in the bill requires clarification to accomplish this."  (Sen. Com. on Environmental Quality, Analysis of Assem. Bill No. 341 (2011-2012 Reg. Sess.) as amended May 5, 2011, p. 6.)

8

determining when a permit needs to be revised and should not be utilized for any other purpose."

The LEA may issue the permit only "if it finds that the proposed solid waste facilities permit is consistent with this division and any regulations adopted by the [B]oard pursuant to this division [Division 30, Waste Management, § 40000 et seq.] applicable to solid waste facilities." (§ 44008, subd. (b).) "The enforcement agency shall issue the permit only if it finds that the proposed solid waste facilities permit is consistent with the standards adopted by the [B]oard." (§ 44010.) The permit shall contain conditions determined appropriate by the LEA. (§ 44014.) The LEA may issue a revised permit only after sending a copy to the Board, which may concur or object and must object if the permit is inconsistent with the statutes and regulations (§§ 44004, subd. (h), 44007, 44009).

If the Board objects to the proposed changes, the LEA shall consider the objections. (§ 44009, subd. (a)(2) [Board "shall submit those objections to the [LEA] for its consideration"].) If the Board does not concur or object within 60 days, it is deemed to have concurred in issuance of the permit. (§ 44009, subd. (a)(1).) The LEA shall issue, modify, or revise a permit "if the [B]oard has concurred in that issuance, modification, or revision of the permit pursuant to Section 44009." (§ 44014, subd. (a).) The permit shall contain conditions determined appropriate by the LEA. (§ 44014, subd. (b).)

In addition to these provisions regarding *modification* of permits, section 50001 speaks of establishment *or expansion* of solid waste facilities. (See fn. 5, *ante*.) Section 50001 provides that, after a LEA has a state-approved CIWMP in place, "a person shall not establish or *expand* a solid waste facility, as defined in Section 40194, in the county unless" (1) it is a disposal facility (like Potrero Hills), "the location of which is identified" in the countywide siting element or amended siting element, or (2) it meets

9

specified recycling requirements and is identified in a nondisposal facility element or updated element. (§ 50001, see fn. 5, *ante*, italics added.)

If the LEA in issuing a permit fails to act as required by law, "any person" may petition the LEA for a hearing (§ 44307), which may be heard by an independent hearing panel (§ 44308) as was the case here. The request for a hearing must include "a statement of the issues." (§ 44310, subd. (a)(1).) The LEA must file a response. (§ 44310, subd. (a)(4).)

After the hearing panel issues its decision (§ 44310, subd. (c)), any party to the hearing may pursue an administrative appeal to the Board "to review the written decision of the hearing panel . . . ." (§ 45030, subd. (a).)[12] The appeal is not a matter of right. Under section 45031, the Board may: "(a) determine not to hear the appeal if the appellant fails to raise substantial issues. [¶] . . . [¶] (c) Determine to accept the appeal and to decide the matter . . . [or] [¶] (d) Determine to accept the appeal and hold a hearing." (§ 45031, see fn. 4, *ante*.)

A former statute allowed a party to proceed to court without pursuing an administrative appeal to the Board, but that statute was repealed in 2008. (Former § 45033, repealed by Stats. 2008, ch. 500, § 34, eff. Jan. 1, 2009.)

A party aggrieved by the Board's decision "may file with the superior court a petition for a writ of mandate for review thereof." (§ 45040.) "The evidence before the

---

[12] Section 45030 states: "(a) A party to a hearing held pursuant to Chapter 4 (commencing with Section 44300) of Part 4 may appeal to the [B]oard to review the written decision of the hearing panel or hearing officer . . . . [¶] . . . [¶] (b) An appellant shall commence an appeal to the [B]oard by filing a written request for a hearing together with a brief summary statement of the legal and factual basis for the appeal. [¶] . . . [¶] (e) The [B]oard shall conduct the hearing on the appeal in accordance with the procedures specified in Article 10 (commencing with Section 11445.10) of Chapter 4.5 of Part 1 of the Government Code [i.e., informal hearings under the Administrative Procedure Act (APA)]."

10

court shall consist of the records before the hearing panel or hearing officer and the [B]oard, if any, including the enforcement agency's records, and any other relevant evidence that, in the judgment of the court, should be considered to effectuate and implement the policies of this division [Division 30, Waste Management, § 40000 et seq.]." (§ 45041.) "Except as otherwise provided in this chapter, Section 1094.5 of the Code of Civil Procedure shall govern proceedings pursuant to this article." (§ 45042.)

The statutes and regulations call for periodic review and revision, if necessary, of permits, CIWMPs, and siting elements.[13] (E.g., § 44015 ["A solid waste facilities permit issued or revised under this chapter shall be reviewed and, if necessary, revised at least once every five years"]; § 41770;[14] Regs., § 18788, subd. (a)(3)(B), (F).)[15] Regulations

_____

[13] We discuss the question of mootness, *post*.

[14] Section 41770 provides: "(a) Each countywide or regional agency integrated waste management plan, and the elements thereof, shall be reviewed, revised, if necessary, and submitted to the board every five years in accordance with the schedule set forth under Chapter 7 (commencing with Section 41800 [Board approval]. [¶] (b) Any revisions to a countywide or regional agency integrated waste management plan, and the elements thereof, shall use a waste disposal characterization method that the board shall develop for the use of the city, county, city and county, or regional agency. The city, county, city and county, or regional agency shall conduct waste disposal characterization studies, as prescribed by the board, if it fails to meet the diversion requirements of Section 41780 [diverting from disposal to recycling], at the time of the five-year revision of the source reduction and recycling element. [¶] (c) The board may review and revise its regulations governing the contents of revised source reduction and recycling elements to reduce duplications in one or more components of these revised elements."

[15] Regulations section 18788 provides in part: "Prior to the fifth anniversary of Board approval of the CIWMP . . . , or its most recent revision, the LTF [local task force] shall complete a review . . . to assure that the county's . . . waste management practices remains consistent with [statutory] waste management practices . . . . [¶ . . . [¶] (3) . . . [The] Review Report . . . shall address . . . . [¶] . . . [¶] (B) changes in quantities of waste within the county . . . [¶] . . . [¶] (F) changes in permitted disposal capacity, and quantities of waste disposed of . . . . [¶] . . . [¶] (4) . . . [The Board shall review the Review Report and approve or disapprove it and identify areas needing revision]. [¶] (b) . . . If a revision is necessary the county . . . shall [revise and resubmit its CIWMP] . . . ."

11

section 18794.4 states that each county must prepare an annual report which includes "a discussion on the status of its Siting Element and Summary Plan. The information provided shall serve as a basis for determining if the Siting Element and/or Summary Plan should be revised. [¶] (b) The Siting Element section in the annual report shall address at least the following: [¶] (1) Any changes in the remaining disposal capacity description provided pursuant to Section 18755.5 since the Siting Element was adopted; [¶] (2) Whether the county or regional agency has maintained, or has a strategy which provides for the maintenance of, 15 years of disposal capacity; [¶] (3) The adequacy of, or the need to revise, the Siting Element; and [¶] (4) If a jurisdiction determines that a revision of the Siting Element is necessary, the annual report shall contain a timetable for making the necessary revisions. . . ." (Regs., § 18794.4.)

With this background in mind, we turn to the background of this case.

## FACTUAL AND PROCEDURAL BACKGROUND

Potrero Hills operates a landfill in Solano County pursuant to a county permit. The permit first issued in 1989, was revised in 1996, and was revised again in 2006. At issue in this appeal is the 2006 revision.

The landfill is described in the 1995 Solano County CIWMP "Siting Element," adopted by county resolution No. 96-5. The trial court allowed SPRAWLDEF to add the siting element as a "supplement" to the administrative record, over defense objections. It had not been presented as evidence to the LEA or the Board.

The siting element, in addition to describing the Potrero Hills Landfill as it existed at that time, discussed an anticipated expansion of Potrero Hills that has since been processed and is not at issue in this appeal. The siting element said: "When [Potrero Hills Landfill] decides to move forward with its proposed landfill expansion, additional CEQA environmental analysis will be required. A part of this analysis will include a siting criteria evaluation to determine whether the proposed landfill expansion conforms to the Solano County Countywide Siting Element solid waste disposal facility siting

12

criteria." A map showed a proposed expansion area to the east of the existing Potrero Hills Landfill.[16] A five-year review by the LEA in 2002 found no changes from the operations allowed by the 1996 permit.

In 2006, Potrero Hills initially proposed a design change increasing the landfill height as well as other significant changes.[17] In October 2006, Potrero Hills submitted an amended application for a revised permit, removing the request to increase the landfill height. The amended application is the application at issue here. It did not propose physical changes to the landfill or an expansion of the landfill area. Instead, it sought to: (1) increase operating hours to 24 hours per day from Monday through Friday and 20 hours per day on Saturday and Sunday; (2) exclude alternative daily cover (ADC) materials and recyclables from tonnage limits; and (3) adjust sludge limitation that will be counted against tonnage limits.

On October 25, 2006, the LEA sent a proposed revised permit with conditions to the Board, as required by section 44007. In December 2006, the Board voted but did not attain the necessary four votes to concur in or object to the proposed revised permit, and

---

[16] As set forth in Potrero Hills' unopposed request for judicial notice granted by the trial court, Potrero Hills applied for this expansion (which is unrelated to the expanded operations at issue in this appeal) in 2002 and, after environmental review, received a new land use permit from the county in 2005. SPRAWLDEF and others filed a lawsuit in Solano County Superior Court, which in February 2007 found the environmental impact review (EIR) was deficient under the California Environmental Quality Act (CEQA, § 21000 et seq.). After EIR revisions, the Solano County Superior Court ultimately found the EIR adequate and discharged its writ in November 2009.

[17] SPRAWLDEF's arguments at times imply that it is this initial, superseded proposal that is at issue.

therefore the Board, by inaction, was deemed to have concurred in issuance of the permit in accordance with section 44009.**18**

Meanwhile, on December 6, 2006, SPRAWLDEF submitted to the LEA a petition for administrative hearing, asserting the LEA failed to act as required by law or regulation. (§§ 44307 [LEA shall hold a hearing "upon a petition to the enforcement agency from any person requesting the enforcement agency to review an alleged failure of the agency to act as required by law or regulation"], 44310, subd. (a)(1) ["hearing shall be initiated by the filing of a written request for a hearing with a statement of the issues," and a request by a person other than the person subject to the action shall be filed "within 30 days from the date the person discovered or reasonably should have discovered, the facts on which the allegation is based"].)

As noted, a petitioner's request for a hearing must include a statement of the issues. (§ 44310, subd. (a)(1).) SPRAWLDEF's administrative petition to the LEA did not include the conformance issue. Instead, the petition set forth a list of six other issues.**19** As we will discuss *post*, SPRAWLDEF attempts on appeal to shoehorn the

---

**18** Section 44009, subdivision (a)(3), provides: "If the [B]oard fails to concur or object in writing within the 60-day period specified in paragraph (1), the [B]oard shall be deemed to have concurred in the issuance of the permit as submitted to it."

**19** The first five issues listed were the following: "1. The LEA failed to reject or condition the landfill permit application due to repeated violations of state minimum operating standards relating to consistent and unabated litter from landfill operations which has significant aesthetic impact as well as impact on the surrounding marshlands and grassland ecology, and the natural life of the marshlands and grasslands. [¶] 2. The LEA failed to reject or condition the landfill permit application due to defective leachate discharge operations at the landfill, including but not limited to the destruction of pumps and outflow systems by the weight of landfill tonnage. [¶] 3. The LEA failed to reject or condition the landfill permit to prevent or limit the impact of noise and lighting from both the landfill operations and trucking to the landfill which would detrimentally impact the habitat and viability of marshland species. [¶] 4. The LEA failed to reject or condition the landfill permit application on the basis that it misstated, improperly counted, or

14

conformance issue into the sixth issue it listed in its petition: "6. The LEA failed to reject or condition the landfill permit application for failing to address the inconsistency of tipping fees[20] in effect at [Potrero Hills], among the lowest in Northern California, with the landfill diversion goals of the Solano County [CIWMP] and the goals of [CIWMPs] of other counties such as Contra Costa, Alameda, Santa Clara, San Mateo, San Francisco, Marin, Sonoma, Mendocino, Lake, and Napa, which rely for financing on per-ton recycling surcharges or fees or business taxes and consequently suffer loss of public funds and ability to attain the goals of the California Integrated Waste Management Act."

The LEA rejected the request for an administrative hearing. SPRAWLDEF filed a petition for writ of mandate in Solano County Superior Court, which denied the petition but was reversed by the Court of Appeal, First Appellate District, Division Three, which in October 2008 published an opinion holding SPRAWLDEF was entitled to a hearing under section 44307. (*Sustainability of Parks, Recycling & Wildlife Legal Defense Fund v. County of Solano Dept. of Resource Management* (2008) 167 Cal.App.4th 1350, 1353 (*SPRAWLDEF I*).)

On May 18, 2009, the LEA hearing was held before an independent hearing panel. (§ 44308.)

---

otherwise misrepresented materials counted as alternative daily cover, recycling or beneficial use, in violation of state regulations, statutes or policies. The proposed permitted level of tonnage accepted for disposal is therefore inaccurate and fails to properly state the expected landfilled tonnages into the facility. [¶] 5. The LEA failed to reject or condition the landfill permit application for failing to properly provide and describe slopes stability standards and construction."

[20] Tipping fees are the fees charged to those who want to dump waste at the landfill. On appeal, SPRAWLDEF agrees LEA has no authority to increase tipping fees. SPRAWLDEF says that, by arguing the inconsistency of the tipping fees with diversion goals of Solano County and other counties, its argument adequately raised the conformance issue it later raised to the Board, i.e., that the expanded operations had to be rejected because they did not conform with the siting element. As we discuss *post*, we disagree that SPRAWLDEF preserved this issue.

15

During the hearing panel's discussion of issue number 6, one panel member said, "Item number six was a little -- very wide ranging in terms of diversion goals and talking about tipping fees and all that stuff. [¶] I know that tipping fees are basically market driven and, you know, . . . if you're trying to compare things to San Francisco or Alameda County, stuff in Solano County is going to be cheaper. [¶] I do know that there was some concern about, you know, there's plenty of landfill capacity, there was evidence -- or there was information that was submitted to this panel regarding unused capacity and how much capacity there is in landfills. [¶] It seemed to me that the argument was about not allowing the landfill to expand, but I don't believe that that's the issue being brought to us right -- today. The issue is about whether or not the LEA failed to reject or condition the landfill application. The application was not necessarily for an expansion of a landfill. . . ." Another panel member said, "For me it wasn't a decision about whether or not we should have allowed the expansion in the first place, but whether or not the LEA did what it was supposed to do. [¶] So leaving aside the issue of whether the permit should have ever been granted in the first place, I am completely satisfied as to the issues that have been before this panel today, the applicant or the petitioner has not met their burden." SPRAWLDEF did not disagree with the panel members that the hearing was not about expansion.

In May 2009, the hearing panel issued its written "DECISION ON SUBMITTED MATTER," concluding SPRAWLDEF failed to show that the LEA failed to act as required by law or regulation in issuing the revised permit to Potrero Hills. Regarding issue No. 6 (tipping fees), the hearing panel stated: "Considerable evidence was presented concerning tipping fees. However, tipping fees do not fall within the purview of the LEA. They are market-driven. Although the current level of tipping fees at Potrero Hills is an issue that should be addressed by the appropriate body within the

16

County of Solano, the LEA's role does not encompass this determination."[21] The hearing panel's disposition added that evidence had been presented identifying past problems with Potrero Hills and, while none was substantial enough to alter the hearing panel's determination, "to the extent the Hearing Panel has the ability to influence the actions of both the LEA and Potrero Hills going forward, it encourages both to continue to act with vigilance regarding the concerns of the environmental community and in accordance with state standards."

In June 2009, SPRAWLDEF appealed the hearing panel's decision to the Board. There, SPRAWLDEF argued for the first time that the revised permit did not "conform" to the description in the siting element, and the siting element had not been amended with a proper description of the expanded operations. Although section 50001 (see fn. 5, *ante*) allows expansion of a landfill "the location of which is identified" (*ibid.*) in the siting element, SPRAWLDEF argued that other statutes and regulations made it clear that a "description" of proposed expanded operations, not mere identification of location, was required in the siting element in order to approve a revised permit.

The Board gave notice that, at its regular meeting on July 21, 2009, it would consider whether or not to hear the appeal (§ 45031, see fn. 4, *ante*) in "an informal hearing considering what is essentially a legal matter – has SPRAWLDEF properly raised substantial issues in its appeal." The Board advised the parties that, "[f]ollowing the hearing, the Board may decide the matter in open session or may retire to closed session to deliberate." No one objected.

At the meeting, the Board heard arguments as to whether the Board should decline to hear the appeal on the ground the conformance issue was a new issue which had not been raised before the hearing panel.

---

[21] Waste collection fees are within the purview of county or a local governmental agency. (§ 40059.)

17

The Board then went into closed session to deliberate. Again, no one objected to deliberations in closed session. The Board returned and informed the parties that the appeal was rejected, and a written decision would follow. The written decision, dated July 22, 2009, showed the vote was unanimous, and said the Board decided not to hear the administrative appeal based on "three separate and independent grounds," as follows:

"First, SPRAWLDEF appealed to the Board an issue that [SPRAWLDEF] did not raise in its 2006 Petition and did not raise to the [h]earing [p]anel. Under Sections 45030 – 45032 of the Public Resources Code which govern appeals to the Board, and under the governing principles of the appellate process as practiced in the courts of this state and before adjudicative bodies, the Board is not obliged to hear a purported 'appeal' of an issue that was not raised by the appellant in its original request for a hearing or in that hearing.

"Second, SPRAWLDEF has submitted no legal authority for its contention that the LEA has a duty or the authority to deny or condition a proposed solid waste facilities permit on the ground that tipping fees differ among landfills in various counties in the region, even if, as SPRAWLDEF argues, those fee differences influence local governments' and private parties' decisions as to where they dispose their solid waste and which decisions consequently affect the ability of various cities and counties to fund recycling and waste reduction programs that help them achieve the goals of the IWMA [Integrated Waste Management Act]. Staff is not aware of any such authority in the IWMA or Board regulations.

"Third, SPRAWLDEF's new basis for the appeal is without merit under the IWMA and could not be the basis for the Board overturning the LEA's actions. SPRAWLDEF maintains that the LEA should have denied or conditioned the 2006 revised solid waste facility permit for Potrero Hills Landfill because it was not 'in conformance with' the Countywide Siting Element. This contention is based on the fact the description of the facility in the proposed revised permit is not the same as the

18

description of the facility in the Countywide Siting Element.  However, the permitting requirements do not require 'conformance with' the Countywide Siting Element for a permit to be issued.  Public Resources Code section 44009[22] authorizes objection to a proposed permit if it is not consistent with the requirements of Public Resources Code section 50001 [see fn. 5, *ante*].  Public Resources Code section 50001(a)(1) provides that no facility shall be established or expanded unless 'the **location . . . is identified** in the countywide siting element (emphasis added).'  In this case, the location of the facility was identified (SPRAWLDEF has not contested otherwise) and therefore, the proposed permit was consistent with the requirements of Public Resources Code section 50001.  SPRAWLDEF's contention would require the Board to expand this requirement beyond its plain meaning in the statute (it should be noted that the term 'conformance' appears nowhere in either . . . section 44009 or 50001).  Since this contention, which was not even argued before the [h]earing [p]anel, does not have any legal merit, it does not raise a substantial issue for the Board to consider.[23]

---

**22**  Section 44009, subdivision (a)(2), provides:  "If the [B]oard determines that the permit is not consistent with the state minimum standards adopted pursuant to Section 43020 [i.e., the regulations], or is not consistent with Sections 43040, 43600, 44007, 44010 ["enforcement agency shall issue permit only if it finds that the proposed solid waste facilities permit is consistent with the standards adopted by the board"], 44017, 44150, and 44152 or Division 31 (commencing with Section 50000), the [B]oard shall object to provisions of the permit and shall submit those objections to the local enforcement agency for its consideration."

**23**  On appeal, the Board's successor, DRRR, says the Board decided "that because SPRAWLDEF's conformance argument was not exhausted below, it was not substantial."  The County makes the same assertion. This assertion misreads the Board's written decision.  The Board said the issue was insubstantial because it lacked merit.  We observe that the Board's staff counsel told the Board that it had discretion to consider the new issue if the Board thought it substantial, even though the issue had not been raised at the county level.  The County appears to argue the Board *must* decline to consider new issues.  We need not go that far.  We read the Board's decision as saying that, in determining whether the administrative appeal raised a substantial issue, the Board did

19

"For these reasons, SPRAWLDEF failed to raise a substantial issue in its Appeal to the Board. Because SPRAWLDEF failed to raise a substantial issue in its Appeal, the Board, acting pursuant to Section 45031(a) determines that it will not hear the Appeal."

On August 20, 2009, SPRAWDEF filed a petition for writ of mandate and complaint for declaratory relief in the trial court. (§ 45040.)[24] The pleading sought nullification of the Board's action on the ground that the closed deliberations violated the open meeting requirements. (Gov. Code, § 11130.3, see fn. 28, *post*.) The pleading also sought to void the permit until the County amended its siting element so that the proposed changes conformed with the siting element and to require the Board to conduct an administrative appeal.

Over objections by other parties, the trial court allowed SPRAWLDEF to supplement the record with documents that had not been submitted in the administrative proceedings, including the County's 1995 siting element. Also included in the supplemental record were records documenting Board debates over the meaning of the word "expansion" and the Board's interpretation of section 50001 as requiring identification only, not description, in the siting element, i.e., as long as the siting element shows the location of a facility as a "dot on the map," the operations may be expanded without revising the siting element to include a description of the expanded operations.

_____

not need to consider the new issue, and even if the Board were to consider it, it failed on the merits.

[24] Section 45040 provides: "(a) Within 30 days from the date of service of a copy of a decision or order issued by the [B]oard pursuant to Section 45031 or 45032, any aggrieved party may file with the superior court a petition for a writ of mandate for review thereof. [¶] (b)(1) The filing of a petition for writ of mandate shall not stay any enforcement action taken or the accrual of any penalties assessed, pursuant to this part or Part 5 (commencing with Section 45000). [¶] (2) Paragraph (1) shall not prohibit the court from granting any appropriate relief within its jurisdiction."

One such document is resolution No. 2000-330, adopted by the Board on September 19, 2000, which stated in part:

"WHEREAS, in order to determine the appropriate interpretation of the differently phrased requirements in PRC section 50001, the Board has held several public hearings, and Board staff has conducted several workshops; and

"WHEREAS, at those hearings and workshops, the Board received an overwhelming amount of testimony indicating that there had been specific legislative intent to limit the 'Post-Gap' finding to a requirement that a facility's location be identified in the CSE [countywide siting element] or NDFE [nondisposal facility element], but not require (as had been during the 'Gap') that the facility's description be in conformance with the description in the CSE or NDFE.

"NOW, THEREFORE, BE IT RESOLVED that in considering proposed Solid Waste Facility Permits, the Board shall interpret PRC 50001 to only require a finding that the facility's location be identified in the CSE or NDFE, either by the facility address or general location on a map, and shall not review the facility's conformance to the description set forth in those documents for the purposes of this finding."[25]

After hearing argument, the trial court on September 28, 2010, issued its written order denying the mandamus petition and declaratory relief complaint and entered judgment.

Regarding the open meeting law, the trial court noted SPRAWLDEF had received advance notice in the formal notice of hearing that the Board may choose to deliberate in closed session, yet SPRAWLDEF never objected. The trial court cited Government Code section 11126, subdivision (c)(3), which allows closed deliberations in proceedings required to be conducted under the *formal* hearing provisions of the APA (Gov. Code,

---

[25] SPRAWLDEF notes the Board did not promulgate any regulation on this point.

21

§ 11500 et seq.) "or similar provisions of law" (*id*., § 11126, subd. (c)(3)).  The court noted section 45030 says the Board shall conduct hearings on appeals in accordance with the *informal* hearing provisions of the APA (Gov. Code, § 11445.10), which the court viewed as "similar provisions of law."  The trial court added:  "Petitioner's argument that the Board could hold a closed session to deliberate on the appeal itself, but not on the 'preliminary hearing' decision as to whether to accept the appeal, raises a distinction without a real difference.  The determination as to whether the appeal raised a 'substantial issue' inevitably touched on the full merits of the case, as the Board's decision demonstrates.  The decision as to whether to accept the appeal was, in effect, a decision on the appeal, subject to the procedures required under . . . section 45030(e), and the Bagley-Keene Open Meeting Act did not prohibit the Board from deliberating in closed session."

The trial court then determined that the doctrine of exhaustion of administrative remedies applies to an administrative appeal to the Board; the tipping fee issue raised before the hearing panel was not equivalent to the conformance issue raised for the first time in the administrative appeal to the Board; the failure to raise the conformance issue at the county level afforded a proper basis for the Board to determine absence of a substantial issue for administrative appeal; the Board was not required to hear the case as an appeal from its own deemed concurrence in the revised permit; and SPRAWLDEF failed to show a substantial issue regarding tipping fees.  The trial court also rejected SPRAWLDEF's claim for declaratory relief to declare that an expansion must be described in a siting element, because declaratory relief is unavailable when the Legislature has designated a remedy to review administrative action.  (See *County of Los Angeles v. State Water Resources Control Bd.* (2006) 143 Cal.App.4th 985, 1002.)

## DISCUSSION

### I. Mootness

As noted *ante*, statutes and regulations call for periodic review and revision, if necessary, of permits, CIWMPS, and siting elements. (E.g., § 44015; § 41770, see fn. 14, *ante*; Regs., § 18788, subd. (a)(3)(B), (F), see fn. 15, *ante*; Regs., § 18794.4.)

This appeal, which was filed in November 2010, involves a 1995 countywide siting element and a 2006 permit revision. In March 2012, we invited supplemental briefing on the impact of the provisions for periodic review, which we discuss *post*. Potrero Hills, exceeding the scope of our invitation, argued this case is moot because a new, revised permit issued on February 14, 2012. Potrero Hills attached a copy of the new permit to its supplemental brief—in violation of the procedure for judicial notice in the reviewing court. (Cal. Rules of Court, rule 8.252.) We declined to take judicial notice. Moreover, a new permit would not lead us to dismiss this appeal as moot because, as argued by SPRAWLDEF, this appeal challenges the very process by which permits are issued, a matter of public interest which is likely to recur. (*Fuller v. Bowen* (2012) 203 Cal.App.4th 1476, 1483.)

After the March 2012 filing of supplemental briefs, the County LEA in August 2012 filed a motion to dismiss the appeal as moot. DRRR and Potrero Hills joined the dismissal motion. The County LEA also filed a request for judicial notice (Evid. Code, § 459) of (1) the February 14, 2012, revised permit, (2) a newspaper article referencing SPRAWLDEF's awareness of the February 2012 revised permit, and (3) DRRR's July 17, 2012, approval of Solano County's June 17, 2012, request for DRRR approval of the county's amendment of the countywide siting element, which assertedly updated information on the Potrero Hills Landfill and incorporated the approved expansion of the Potrero Hills Landfill.

The dismissal motion argued the appeal is moot, because the 2012 revised permit supersedes the 2006 permit challenged in this appeal, and SPRAWLDEF failed to pursue

an administrative challenge of the 2012 revised permit. The dismissal motion also suggested that the 2012 amendment of the siting element brought the permit into conformance with the siting element such that no relief can be granted to SPRAWLDEF in this litigation. The dismissal motion also argued the Bagley-Keene issue about open meetings is moot because the Board has been replaced by a director of DRRR who makes a unilateral decision for which no meeting is needed.

SPRAWLDEF opposed the dismissal motion, arguing: (1) the revised permit does not resolve SPRAWLDEF's argument about improper application of the judicial doctrine of exhaustion; (2) the revised permit and amended siting element do not resolve the question about interpretation of section 50001; (3) the Bagley-Keene issue is not moot because violation of the open meeting law can result in invalidating the previous decision; and (4) the dispute is of public concern subject to repetition.

We denied the dismissal motion and deferred ruling on the request for judicial notice. We now deny the request for judicial notice, as we will explain.

As to the dismissal motion, we declined to dismiss the appeal as moot. The policy behind the mootness doctrine is that courts decide actual controversies and normally will not render opinions that are merely advisory. (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178-1179.) An appeal "is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.) " 'The pivotal question in determining if a case is moot is . . . whether the court can grant the plaintiff any effectual relief.' " (*Cuenca v. Cohen* (2017) 8 Cal.App.5th 200, 217.) We are compelled to dismiss when it is impossible for this court to grant any effective relief. (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 120-121.)

There are exceptions to the mootness rule, in that reviewing courts may exercise discretion to decide an appeal despite events mooting it, when a case poses an issue of broad public interest and is likely to recur. (*Edelstein v. City and County of San*

24

*Francisco* (2002) 29 Cal.4th 164, 172; *City of Hollister v. Monterey Ins. Co*. (2008) 165 Cal.App.4th 455, 479-480.) " '[W]hen a pending case involves a question of broad public interest which is likely to recur between the same parties or others, "the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." ' " (*City of Susanville v. Department of Corrections & Rehabilitation* (2012) 204 Cal.App.4th 377, 380.)

Here, waste management is a matter of public interest, and the same controversy is likely to recur, even between the same parties, because landfill needs and operations are subject to change, and the parties' diverse interpretations of section 50001 and the conformance argument predict future similar disputes. Additionally, questions concerning what parties need to do to preserve the record will likely reoccur. We reject the County LEA's argument that SPRAWLDEF's failure to challenge the 2012 permit proves there is no recurring controversy.

We also conclude the Bagley-Keene issue is not moot, because if we were to conclude that the Board violated the open meeting law and there was prejudice, that could result in nullification of the Board's decision.

As to the request for judicial notice, we deny it because the documents are not relevant to resolve the questions on appeal or to justify dismissal of the appeal as moot. (*People v. Curl* (2009) 46 Cal.4th 339, 360, fn. 16 [to be judicially noticed, matter must be relevant to the case at hand]; Cal. Rules of Court, rule 8.252(a)(2)(A) [to obtain judicial notice by reviewing court under Evid. Code, § 459, moving party must show matter is relevant to the appeal].)

Having declined to dismiss the appeal as moot, we will proceed to the issues.

## II.  Standard of Review

The Waste Management Act calls for judicial review of Board decisions by administrative mandamus proceedings under Code of Civil Procedure section 1094.5. (§ 45040, see fn. 24, *ante*; see also § 45042.)  The inquiry extends to whether the Board

had (1) proceeded without, or in excess of, jurisdiction; (2) whether there was a fair trial; and (3) whether there was any prejudicial abuse of discretion. (Code Civ. Proc., § 1094.5, subd. (b); *Hines v. California Coastal Com*. (2010) 186 Cal.App.4th 830, 839 (*Hines*).) Abuse of discretion is established if the Board did not proceed in the manner required by law; the decision is not supported by the findings; or the findings are not supported by the evidence. (Code Civ. Proc., § 1094.5, subd. (b).)

In determining whether the Board's findings are supported by the evidence, we apply the substantial evidence standard. (Code Civ. Proc., § 1094.5, subd. (c).) We presume the Board's decision is supported by substantial evidence, and SPRAWLDEF has the burden to demonstrate insufficiency of the evidence. (*Hines, supra*, 186 Cal.App.4th at p. 839.)

While we review the trial court's determination under the substantial evidence standard of review (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824), "[w]e apply a de novo standard of review to the legal question of whether the doctrine of exhaustion of administrative remedies applies in a given case." (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 873 (*Citizens for Open Government*).) We also review de novo questions of statutory interpretation, but mindful of the weight to be accorded to the interpretation of agencies charged with administering the statutes.

"Courts must . . . independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. [Citation.] Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative. To quote the statement of the Law Revision Commission. . ., 'The standard for judicial review of agency interpretation of law is the *independent*

*judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' " (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8 (*Yamaha*).)

### III.  Statutes of Limitations

In addition to defending the judgment, the County and Potrero Hills argue that SPRAWLDEF's conformance claim is barred by statutes of limitations, estoppel, or laches, because SPRAWLDEF knew or should have known about the conformance issue when it filed its protest with the LEA.  This is not really a limitations/estoppel/laches argument, because the protest was timely filed.  Rather, this is a variation on the theme, addressed *post*, that SPRAWLDEF should not be allowed to change theories midstream.

The County also argues that, to the extent SPRAWLDEF challenges Potrero Hills operations as they have been occurring since 1996, these operations have long since "vested," barring the challenge.  However, SPRAWLDEF does not challenge the original operations but only the assertedly expanded operations authorized by the revised permit, which SPRAWLDEF timely challenged.

We see no grounds to affirm the judgment on the alternative basis of statutes of limitations, estoppel, or laches.  As will appear, we affirm the judgment based on other grounds.

### IV.  Bagley-Keene Open Meeting Act

We first address the open meeting issue, because a violation may result in nullification of the Board's decision.  SPRAWLDEF argues the Board's closed-door deliberations to decide whether to hear the appeal violated the Bagley-Keene Open Meeting Act (Gov. Code, § 11120 et seq.).  We disagree.

"[W]hen reviewing the interpretation and proper application of a statute where, as here, the underlying facts are not in dispute, the reviewing court must exercise its independent judgment in making that determination." (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 952.)

California Constitution, article I, section 3,[26] as amended November 4, 2004, requires that open meeting laws be broadly construed in favor of transparency.

The purpose of the Bagley-Keene Open Meeting Act is stated in Government Code section 11120: "It is the public policy of this state that public agencies exist to aid in the conduct of the people's business and the proceedings of public agencies be conducted openly so that the public may remain informed. [¶] In enacting this article the Legislature finds and declares that it is the intent of the law that actions of state agencies be taken openly and that their deliberation be conducted openly. [¶] The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. [¶] This article shall be known and may be cited as the Bagley-Keene Open Meeting Act."

Government Code section 11123, subdivision (a), states: "All meetings of a state body shall be open and public and all persons shall be permitted to attend any meeting of a state body except as otherwise provided in this article." The article allows closed sessions "to deliberate on a decision to be reached in a proceeding required to be conducted pursuant to Chapter 5 (commencing with Section 11500) [formal adjudicative

---

[26] California Constitution, article I, section 3, subdivision (b), states: "(1) The people have the right of access to information concerning the conduct of the people's business, and therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny. [¶] (2) A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. A statute, court rule, or other authority adopted after the effective date of this subdivision that limits the right of access shall be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest. . . ."

hearings under the APA] *or similar provisions of law*." (Gov. Code, § 11126, subd. (c)(3), italics added.) Here, the trial court relied on the italicized language and the parties dispute whether section 11126 applied.

The Bagley-Keene Act provides remedies by authorizing legal actions to prevent threatened violations of the act or declare its applicability to past or threatened future actions of a body (Gov. Code, § 11130, subd. (a)), and to declare null and void an action taken in violation of the Bagley-Keene Act (Gov. Code, § 11130.3).**27** (*Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 797.) However, nullification of action taken by a public body is a drastic remedy and risks upsetting government stability. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 527, fn. 7 (*Regents of University of California*), superseded by statute on other grounds as stated in *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 914-915.)

Even assuming the Board violated the open meeting law by deliberating in closed session, SPRAWLDEF fails to show prejudice and therefore fails to show grounds for the nullification it seeks.**28** In discussing the Bagley-Keene Act, the court in *North Pacifica LLC v. California Coastal Com.* (2008) 166 Cal.App.4th 1416 (*North Pacifica*), held that a violation of the Bagley-Keene Act's notice requirement did not automatically nullify or invalidate the actions taken at a meeting, and to invalidate the agency action, the plaintiff

---

**27** Government Code section 11130.3 provides in pertinent part: "(a) Any interested person may commence an action by mandamus, injunction, or declaratory relief for the purpose of obtaining a judicial determination that an action taken by a state body in violation of [Government Code] Section 11123 [meetings shall be open and public] or 11125 [notice of meeting] is null and void under this section. Any action seeking such a judicial determination shall be commenced within 90 days from the date the action was taken. Nothing in this section shall be construed to prevent a state body from curing or correcting an action challenged pursuant to this section."

**28** At our invitation, the parties filed supplemental briefing on the question of prejudice, which had not been addressed in the original briefing.

would have to show prejudice. (*North Pacifica*, at p. 1433.) "In analogous situations under the Ralph M. Brown Act (Brown Act; Gov. Code, § 54950 et seq.), [fn. omitted] courts have held that violations of that act do not automatically invalidate the actions taken by a local public entity at the public meeting to which the violations pertain. 'Even where a plaintiff has satisfied the threshold procedural requirements to set aside an agency's action, Brown Act violations will not necessarily "invalidate a decision. [Citation.] *Appellants must show prejudice*." [Citation.]' [Citation.] Because the Brown Act provides a 'virtually identical open meeting scheme' to the Bagley-Keene Act [citation], this principle of the Brown Act should apply equally to the Bagley-Keene Act." (*North Pacifica*, at pp. 1433-1434.)

*North Pacifica*'s discussion of prejudice is arguably dictum, because the appellate court also found substantial compliance with the open meeting law. (*North Pacifica, supra*, 166 Cal.App.4th at p. 1433.) Nevertheless, as observed by Witkin, "[a] statement that does not possess the force of a square holding may nevertheless be considered highly persuasive, particularly when made by an able court after careful consideration . . . ." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 511, pp. 575-576, and cases cited therein.) We consider *North Pacifica* persuasive because of its careful consideration, and also because nullification is a drastic remedy that risks upsetting government stability. (*Regents of University of California, supra*, 20 Cal.4th at p. 527, fn. 7.) Moreover, other courts have recognized the validity of *North Pacifica's* discussion concerning prejudice. (See *Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 670-671 [citing *North Pacifica* for the proposition that prejudice must be established to obtain invalidation under the Brown Act].)

In its supplemental brief, SPRAWLDEF argues the prejudice requirement should be limited to cases where the Bagley-Keene violation was a defective notice of the public hearing, because that was the factual circumstance of cases which required a showing of

prejudice. We see no principled basis for making this distinction. We conclude a party seeking nullification must show prejudice.

Here, SPRAWLDEF makes no showing of prejudice. Its supplemental brief argues that "[a] closed session is inherently prejudicial" because it deprives the parties of a record of the grounds and influences on the decision. Here, however, the points were documented in the transcript of the hearing, and the grounds were documented in the Board's written decision explaining its reasoning.

SPRAWLDEF argues it was specifically prejudiced because it never got a hearing on the substance of its administrative appeal. It points to documents of which the trial court took judicial notice, i.e., transcripts of prior Board meetings dating back to 1998, cited in SPRAWLDEF's opening brief as evidence that the conformance issue is a substantial issue because it previously generated much discussion with much participation from landfill industry lobbyists. However, the circumstance that the Board declined to hear SPRAWLDEF's appeal does not demonstrate that closed deliberations were prejudicial. SPRAWLDEF offers nothing from which we could conclude that the Board would have accepted the appeal had it deliberated openly.

Moreover, SPRAWLDEF never objected to closed deliberations, even though it knew in advance of the hearing that the Board might deliberate in closed session. The Board's notice of hearing stated: "Following the hearing, the Board may decide the matter in open session or may retire to closed session to deliberate." The notice also stated: "If you object to any of the procedures, please let the other parties and me know right away so that we can arrange a conference call to discussion your concerns." SPRAWLDEF made no objection. Nor did SPRAWLDEF object when the Board's chairperson stated during the hearing on whether to entertain the administrative appeal, that the Board would in fact deliberate in closed session at the end of the Board meeting. Nor did SPRAWLDEF object when the Board actually went into closed session to

31

deliberate.[29]  SPRAWLDEF obviously perceived no prejudice at the time, and we perceive none now.

We conclude SPRAWLDEF fails to show ground for reversal based on the Bagley-Keene open meeting law.  We need not decide whether the Board's hearing to decide whether or not to hear the administrative appeal constituted an adjudicative hearing under similar provisions to the formal hearings of the Administrative Procedure Act.

### V.  Preserving All Issues at Each Administrative Stage

SPRAWLDEF argues the Board, as an administrative agency, lacked authority to invoke the judicial doctrine of exhaustion of administrative remedies.  We conclude the Board had discretion to find that SPRAWLDEF *forfeited* the conformance issue by failing to preserve it at all stages of the administrative proceedings.

The real issue here is not exhaustion of administrative remedies, but "a corollary principle to the doctrine that administrative remedies must be exhausted.  That principle is: a litigant must fully present its arguments and evidence at the administrative hearing. ' "Before seeking judicial review a party must show that he has made a full presentation to the administrative agency upon all issues of the case *and at all prescribed stages of the administrative proceedings*." '  [Citation.]  'The requirement that a litigant present his or her arguments and evidence fully at the administrative hearing level is analogous to the doctrine of exhaustion of administrative remedies, though it is based on different policies.'  (1 Cal. Administrative Mandamus: Laying the Foundation at the Administrative Hearing (Cont.Ed.Bar 3d ed. ([2015]) § 3.49, p. [3-36] ([Cal.]

---

[29]  The Board says it also gave notice of possible closed deliberations in the Board's meeting agenda.  However, that was a boilerplate notice at the end of an agenda which included a variety of items.

32

Administrative Mandamus).)” (*In re Electric Refund Cases* (2010) 184 Cal.App.4th 1490, 1502, italics added.)

"The requirement that a full presentation be made before the adjudicating agency applies equally when a second administrative agency, exercising appellate functions, enters the picture. A party may not raise new issues on review before such a tribunal if the issues could have been asserted before the lower administrative body." (Cal. Administrative Mandamus, *supra*, § 3.73, p. 3-50; *Harris v. Alcoholic Bev. etc. Appeals Bd.* (1961) 197 Cal.App.2d 182, 187 (*Harris I*).) "When the facts are not in dispute, however, a party may not be precluded from raising a new question of law." (Cal. Administrative Mandamus, p. 3-50; *Harris v. Alcoholic Bev. etc. Appeals Bd.* (1966) 245 Cal.App.2d 919, 924 (*Harris II*).)

*Harris I, supra*, 197 Cal.App.2d 182, is instructive in the context of an administrative procedure involving an appeal at second level of administrative review. The *Harris I* court held the Alcoholic Beverage Control Appeals Board improperly considered a new issue raised by a liquor licensee for the first time on administrative appeal of a decision of the Department of Alcoholic Beverage Control suspending the liquor license. (*Id.* at pp. 184, 187.) The *Harris I* court wrote: " 'It was never contemplated that a party to an administrative hearing should withhold any defense then available to him or make only a perfunctory or "skeleton" showing in the hearing and thereafter obtain an unlimited trial de novo, on expanded issues, in the reviewing court. [Citation.] The rule compelling a party *to present all legitimate issues* before the administrative tribunal is required in order to preserve the integrity of the proceedings before that body and to endow them with a dignity beyond that of a mere shadow-play.' " (*Id.* at p. 187, italics added.)

We conclude the tipping fees issue was not the equivalent of the conformance issue SPRAWLDEF belatedly asserted. Indeed, the siting element was never presented

33

to the LEA so that it could determine whether the revised permit was in conformance thereof.  SPRAWLDEF simply did not present the conformance issue to the LEA.

We do note that *Harris I* is not directly on point factually.  There, the licensee stipulated at the beginning of the initial administrative hearing that the specific matter was not at issue, causing the department to forego its witnesses.  (*Harris I, supra*, 197 Cal.App.2d at p. 186.)  In a subsequent appeal, *Harris II, supra*, 245 Cal.App.2d 919, the court held that the appeals board could properly consider a new defense of entrapment that the licensee had failed to raise at the departmental hearing, because it was clear the board considered the undisputed facts to show entrapment as a matter of law.  (*Id*. at pp. 923-924.)

Here, we observe that while there is a legal question as to whether a revised permit must conform to the siting element, there are also factual disputes, e.g., what constitutes "expansion,"[30] whether the revised permit reflects an expansion, and whether the expansion conflicts with the siting element.  SPRAWLDEF views the revision as an enormous expansion of operations, while its opponents disagree.  These are matters that would have been fleshed out had the issue been raised at the first stage of the administrative review at the LEA hearing.

Unlike exhaustion of administrative remedies, which is a jurisdictional requirement (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 589 (*Tahoe Vista*)), forfeiture for failure to preserve issues affords some discretion to the reviewing body.  A treatise on administrative hearings notes:  "At the administrative proceeding, a party must preserve all points he or she intends to urge on appeal.  Authorities differ on whether this doctrine of preservation of issues is part of the

---

[30]  Indeed, it is not a foregone conclusion that extending operation hours, as opposed to expanding physical area, is an expansion within the meaning section 50001. SPRAWDEF assumes that it is, but did not specifically address this issue in its briefing.

exhaustion of remedies or is a separate but related rule. Professor Pierce includes it in his discussion of exhaustion of administrative remedies. 2 Pierce, Administrative Law Treatise § 15.8 (5th ed 2010). Cooper views it as a separate but related rule. 2 Cooper, State Administrative Law 595 (1965). The preservation of issues doctrine differs from the exhaustion of remedies doctrine. The latter is jurisdictional, while the former does not bar a reviewing court from considering an issue not raised before the agency when circumstances warrant (*e.g.*, when an injustice would result). *Hormel v. Helvering* (1941) 312 U.S. 552, 557, [85 L.Ed. 1037, 1041]. See also *Greenblatt v. Munro* (1958) 161 [Cal.App.]2d 596, 606. . . ." (Cal. Administrative Hearing Practice (Cont.Ed.Bar 2d ed. (2013) § 8.108, p. 8-69.)

" 'The essence of the exhaustion doctrine is the public agency's opportunity to receive and respond to articulated factual issues and legal theories *before* its actions are subjected to judicial review.' " (*Citizens for Open Government, supra*, 144 Cal.App.4th at p. 874.) But the same reasoning justifies the requirement that a party fully present *all issues* at every stage of administrative proceedings. It is unfair to criticize the County for something that SPRAWLDEF never argued to the hearing panel at the county level, particularly when there are factual matters in dispute.

SPRAWLDEF quotes from this court's opinion in *Tahoe Vista, supra*, 81 Cal.App.4th 577, that the purpose of the doctrine of exhaustion of administrative remedies "is fully served when parties raise all issues before the administrative body with ultimate or final responsibility to approve or disapprove the project, even if those issues were not raised before subsidiary bodies in earlier hearings." (*Id*. at p. 594, citing *Browning-Ferris Industries v. City Council* (1986) 181 Cal.App.3d 852, 860 (*Browning-Ferris*).) However, LEA is not a mere subsidiary body, but rather has independent authority as an enforcement agency to issue revised landfill permits (§ 44008), though it must consider any objections raised by the Board (§ 44009) and is subject to discretionary review by the Board (§ 45031). (See generally §§ 43200-43222, 44300-

35

44310; *No Wetlands Landfill Expansion v. County of Marin* (2012) 204 Cal.App.4th 573, 581-582 [approval of landfill permit is vested in LEA, not the county itself].)

Moreover, *Tahoe Vista* was a CEQA case subject to CEQA's specific exhaustion requirements. There, the county planning commission was a subsidiary body to the county board of supervisors, and the county code expressly stated that an issue had to be presented to the planning commission first in order to be considered by the board of supervisors. (*Tahoe Vista, supra*, 81 Cal.App.4th at p. 592.) The appellants had raised the issue at the first level but failed to raise it to the board of supervisors. (*Id.* at p. 584.) This court concluded the appellants failed to exhaust their administrative remedies (*id.* at pp. 592-594), but specified its decision was limited, because it turned on the specific provisions of the county code (*id.* at p. 592, fn. 6).

In another CEQA case, the court in *Browning-Ferris*, *supra*, 181 Cal.App.3d 852, held there was no failure to exhaust administrative remedies where the appellant had not presented its issue to the city planning commission during public hearings on the draft EIR, but did present the issue to the city council before that body approved the EIR. (*Id.* at p. 860.) By doing so, the appellant had pursued its administrative remedies before the agency with the ultimate responsibility for giving final approval of the EIR. (*Ibid.*) The municipal code specified that the planning commission must find an EIR complete and in compliance with CEQA, but the process did not end at that point, and the city council had to approve the EIR. (*Ibid.*)

Here, it is the LEA which issues the permit, though with opportunity for Board input. The Board has discretion to entertain an appeal from a LEA decision, but it need not do so. (§ 45031.) If the Board does not exercise that discretion, the LEA's decision is final. Therefore, the subsidiary bodies rule upon which SPRAWLDEF relies does not apply here.

SPRAWLDEF argues the instant case is like *Citizens for Open Government, supra*, 144 Cal.App.4th 865. In that CEQA case, the court held that a citizens' group,

which voiced its objections at planning commission hearings and had its contentions reviewed by the city council in an administrative appeal filed *by another party*, could pursue mandamus relief in the trial court, even though the citizens' group had not filed its own administrative appeal to the city council. That scenario is clearly different from the circumstances presented here. SRAWLDEF quotes language from that case, that the city code did not require specification of issues for an administrative appeal, and the city council gave independent and new consideration of the matter as the final decisionmaker. (*Id*. at p. 877.) However, the appellate court observed that CEQA expressly requires a final decision by an elected body, and exhaustion of administrative remedies turns on procedures specific to the particular public agency. (*Id*. at p. 876.) SPRAWLDEF argues section 45030 requires only that the administrative appellant raise a substantial issue; it does not require that the issue must have been raised before the LEA. However, as we have noted, here Board review is discretionary, unlike in CEQA cases where the decision must be made by an elected body.

SPRAWLDEF argues this court should consider the issue even if it was not raised to the LEA, because section 45041 states: "The evidence before the court shall consist of the records before the hearing panel or hearing officer and the board . . . *and any other relevant evidence that, in the judgment of the court, should be considered to effectuate and implement the policies of this division*." (Italics added.) In its reply brief, SPRAWLDEF suggests for the first time that the Board should have considered the issue even if it was not raised to the LEA, because section 45032**31** provides that the evidence

---

**31** Section 45032 provides: "(a) In the [B]oard's hearing on the appeal, the evidence before the board shall consist of the record before the hearing panel or hearing officer, relevant facts as to any actions or inactions not subject to review by a hearing panel or hearing officer, the record before the [LEA], written and oral arguments submitted by the parties, and *any other relevant evidence that, in the judgment of the* [B]oard, should be considered to effectuate and implement the policies of this division. [¶] (b) The [B]oard may only overturn an enforcement action, and any administrative civil penalty, by a

37

before the board shall include the record before the hearing panel and the LEA "and any other relevant evidence that, in the judgment of the board, should be considered to effectuate and implement the policies of this division." (§ 45032, subd. (a).) Even if we address the point raised improperly for the first time in a reply brief (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 763-766), the statutes allowing the court and the Board to consider *new evidence* say nothing about entertaining *new issues*. The new evidence must be relevant, which means it must relate to the issues decided. Clearly, the statutes merely allow new evidence on the issues properly presented, consistent with Code of Civil Procedure section 1094.5, subdivision (e), which provides: "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may . . . remand[] the case to be reconsidered in light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

Additionally, as stated by the trial court, the importance of preserving issues at all administrative stages is reflected in the Legislature's 2008 repeal of former section 45033,[32] which had provided that a person could file a court action despite failure to

---

[LEA] if it finds, based on substantial evidence, that the action was inconsistent with this division. If the [B]oard overturns the decision of the [LEA], the hearing panel, or the hearing officer, or finds that the enforcement agency has failed to act as required, the board may do both of the following: [¶] (1) Direct that the appropriate action be taken by the [LEA]. [¶] (2) If the [LEA] fails to act by the date specified by the [B]oard, take the appropriate action itself." (Italics added.)

[32] Former section 45033 stated: "A failure to appeal to the hearing panel, the hearing officer, or the board for review, or the refusal of the [LEA], a hearing panel, the hearing officer, or the board to hear an appeal does not preclude a person from filing an action with the superior court to contest any action or inaction of the [LEA] or the board."

appeal to a hearing panel or the Board. The legislative history of the bill in which former section 45033 was repealed did not address the appeal specifically but indicated, "This bill revises the enforcement responsibilities of the solid waste law, as specified," and further stated, "[a]ccording to the sponsor, [the Board], there are gaps in the statutory authority of [the Board] that impede the agencies from taking enforcement actions to protect the public health and the environment from illegal or inappropriate solid waste disposal and solid waste handling practices. This proposal will fill in those gaps with the necessary language that clarifies [the Board] and LEA responsibilities." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Assem. Bill No. 2679 (2007-2008 Reg. Sess.) as amended Aug. 14, 2008, pp. 1, 5.)

We conclude the Board was not required to entertain the administrative appeal of the conformance issue, because that issue was not presented to the LEA.

### VI. The Board's Decision on the Merits

Despite declining to entertain the administrative appeal, the Board went further and said SPRAWLDEF's conformance argument would fail on the merits. SPRAWLDEF fails to show any reversible error on the merits.

Statutory interpretation is a question of law which we review de novo. Where the question also calls for an examination of the underlying factual predicate for application of the statute, review is de novo if the evidentiary record on that point is both sufficient and undisputed. (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124.)

In construing a statute, "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and

---

(Added by Stats. 1995, ch. 952, § 35, repealed by Stats. 2008, ch. 500, § 34, eff. Jan. 1, 2009.)

'if there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.] If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation.] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citations.] Any interpretation that would lead to absurd consequences is to be avoided." (*Allen v. Sully-Miller Contracting Co*. (2002) 28 Cal.4th 222, 227.) While in exercising our independent judgment regarding the construction of a statute we may give deference to an agency's interpretation (*Yamaha, supra*, 19 Cal.4th at pp. 7-8), no such deference is required here given the plain language of the statute.

Section 50001, subdivision (a), provides that a waste facility cannot be "established or expanded" unless it is (1) a disposal facility "the location of which" is identified in the "countywide siting element," or (2) a facility that recycles at least five percent of its waste that is identified in a nondisposal facility element. (See fn. 5, *ante*.) To "establish" a facility, subdivision (c) of section 50001 adds additional requirements of "identification and description." Subdivision (c) does not address expansions. Thus, for expansions, the statute only requires that the *location* of the disposal facility appear in the siting element. It does not require that the siting element be changed so that the expansion conforms with the siting element.

SPRAWLDEF's position—that an expansion must be described in the countywide siting element in order for a revised permit to issue—would require us to judicially delete from the statute the words "the location of" (see fn. 5, *ante*). Principles of statutory construction require that we avoid interpretations that would render some words surplusage. (*Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 921.) Moreover, it would require that we read into the statute language not included therein. " '[W]e presume the Legislature intended everything in a statutory scheme, and we

40

should not read statutes to omit expressed language or include omitted language.' " (*People v. Connor* (2004) 115 Cal.App.4th 669, 691, quoting *Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894; accord, *Yao v. Superior Court* (2002) 104 Cal.App.4th 327, 333.) If the Legislature intended a conformance requirement, they would have so said. Indeed, requiring conformance with the siting element description in revised permits would in many cases inevitably require revision of the siting element, a policy matter that is legislative in nature.

Accordingly, we conclude section 50001 does not require an LEA or the Board to deny a permit revision on the ground that the expanded operations are not already described in the siting element. If SPRAWLDEF believes that expansions should not be allowed unless the siting element is revised and that allowing landfill operations more expansive than those described in the siting element will result in unchecked growth of landfills, then that is something to be taken up with the Legislature. We will not rewrite the statute.

We conclude SPRAWLDEF fails to show grounds for reversal of the judgment.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


    s/MURRAY    , J.


We concur:


    s/RAYE    , P. J.


    s/ROBIE    , J.

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SUSTAINABILITY, PARKS, RECYCLING AND WILDLIFE DEFENSE FUND (SPRAWLDEF), <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DEPARTMENT OF RESOURCES RECYCLING AND RECOVERY et al., <br><br> Defendants and Respondents; <br><br> WASTE CONNECTIONS, INC., et al., <br><br> Real Parties in Interest and Respondents. | C066582 <br><br> (Super. Ct. No. 34200980000301) <br><br> ORDER GRANTING PARTIAL PUBLICATION AND MODIFICATION OF OPINION <br><br> [NO CHANGE IN JUDGMENT] |

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I., II., III. and IV.

1

THE COURT:

It is ordered that the opinion filed herein on March 26, 2019, be modified as follows:

1. On page 35, in the first full paragraph, delete the citation, "(*Citizens for Open Government, supra*, 144 Cal.App.4th at p. 874)" and replace it with "(*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 873 (*Citizens for Open Government*).)"

2. On page 39, the paragraph beginning "In construing a statute," delete the citation "(*Yamaha, supra*, 19 Cal.4th at pp. 7-8)" on page 40 and replace it with "(*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8)."

This modification does not affect the judgment.

FOR THE COURT:


_____/s/_____
Raye, P. J.



_____/s/_____
Robie, J.



_____/s/_____
Murray, J.

2

# EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Sacramento County, George Patrick Marlette, Judge. Affirmed.

The Smith Firm and Kelly T. Smith for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Denise Ferkich Hoffman and Matthew G. Bullock, Deputy Attorneys General, for Defendant and Respondent.

Dennis Bunting, County Counsel, Lori A. Mazzella, Assistant County Counsel, for Defendant and Respondent.

Gary J. Smith and Jacob P. Duginski, Beveridge & Diamond, Attorneys for Real Party in Interest and Respondent.